GENERAL INVESTMENT COMPANY *v.* LAKE SHORE & MICHIGAN SOUTHERN RAILWAY COMPANY ET AL.

APPEAL FROM THE CIRCUIT COURT OF APPEALS FOR THE SIXTH CIRCUIT.

No. 34. Argued October 6, 1922.—Decided November 27, 1922.

1. A motion by a defendant to quash service of process may be made in and entertained by the District Court after removal of the cause,

though previously made and overruled in the state court before removal. P. 267.

2. Service on a foreign railway corporation in a State where it had no railroad or office, upon a person not its agent, *held* void. P. 268.

3. A petition of removal filed in a state court, with or without reservations as to jurisdiction, is a special appearance, and leaves the validity of attempted service of process open to question in the District Court. P. 268.

4. An objection to the validity of service of process made by special appearance in the state court and renewed in like manner in the District Court after removal, *held* not waived by a stipulation that evidence directly relating to it and used on the first hearing, might be used on the second. P. 269.

5. The filing of a brief, subscribed by solicitors as "solicitors for the defendants," *held* to have been on behalf of the one defendant duly served, and not to have been intended, or to have operated, as a general appearance for another defendant not duly served. P. 270.

6. The restriction (Jud. Code, § 51) that no suit shall be brought in the District Court against any person by any original process or proceeding in any other district than that whereof he is an inhabitant, does not affect the general jurisdiction of the court over the particular cause as defined by § 24, but merely establishes a personal privilege of the defendant which he may waive, and does waive by entering an appearance without claiming it. P. 272.

7. Under Jud. Code, §§ 28, 29, permitting removal of causes to the District Court "for the proper district," the proper district is that one which includes the county or place where the suit in the state court is pending at the time of the removal. P. 274.

8. In providing for removal of suits, arising under the Federal Constitution or laws, "of which the district courts . . . are given original jurisdiction by this title," § 28 of the Judicial Code (like § 2 of the Judiciary Act of 1888,) refers to the general jurisdiction conferred by § 24, and not to the venue provision of § 51, (see *supra*, par. 6). P. 276.

9. A suit arising under the Federal Constitution or laws may therefore be removed to the "proper district" (embracing the seat of the state court) by a defendant who is not an inhabitant of that district, and who consequently could have objected to the venue under Jud. Code, § 51. P. 279.

10. No change in the meaning of the Judiciary Act of August 13, 1888, was intended or wrought by the rearrangement of its parts in the Judicial Code. P. 278.

11. Like §. 51, Jud. Code, the special provision as to venue made by § 12 of the Clayton Act, respecting suits under anti-trust laws, does not affect the general jurisdiction of the District Courts, but allows the defendant a personal privilege which he may waive. P. 279.

12. A suit against two railroad companies—one having lines within and without, and the other lines without, the State of suit,—to enjoin them from entering into consolidation, and to dissolve the consolidation if consummated *pendente lite,* is a suit *in personam* to which the provisions of Jud. Code, § 57, for special service of process in local suits directly relating to specific property, do not apply. P. 279.

13. The office of a supplemental bill is to introduce matters occurring after the filing of the original bill, or not then known to the plaintiff (Equity Rule 34); but not to shift the right in which the plaintiff sues or change the character and object of the suit. P. 281.

14. Application to file a supplemental bill is addressed to the sound discretion of the court. P. 281.

15. Where a decree of the District Court dismissing a bill was affirmed by the Circuit Court of Appeals as to part of the bill but as to the remainder was reversed upon the ground that, as to that part, the dismissal was erroneously based on a supposed defect of parties, *held,* that upon the return of the case, other objections to the remaining part which might have been, but were not, urged or considered on the appeal, could be considered by the District Court, and by the Circuit Court of Appeals on a second appeal. P. 284.

16. In a suit by a shareholder to prevent two corporations from carrying out an agreement for a consolidation alleged to be unlawful, which was subject to ratification by their shareholders, *held,* that one of the corporations, which held shares of the other, was an indispensable party as to so much of the bill as sought to enjoin it from voting them and to enjoin the other from permitting it so to do, but not as to so much as sought to enjoin the other from entering into or consummating the proposed consolidation. P. 285.

17. Under § 16 of the Clayton Act, c. 323, 38 Stat. 730, a private suit to enjoin a violation of that act or of the Sherman Anti-Trust Act, can only be brought in a federal court. Such a suit cannot be brought in a state court. P. 286.

18. Want of jurisdiction in a state court is not cured by removal of the cause to the federal court. P. 288.

19. A decree dismissing a bill for want of jurisdiction should be without prejudice. P. 288.

20. When a private individual, in virtue of a minute interest in the stock of a railroad corporation acquired after it entered into an agreement looking to consolidation with other companies, seeks to enjoin it from entering the consolidation as contrary to the policy of the State respecting control of parallel, competing lines, but shows by his allegations that the control complained of has long existed, practically, through stock ownership, and exhibits no objection on the part of the State or the other shareholders, he must show in his bill, with precision and certainty, in what respects the law is about to be violated and, clearly and positively, that substantial and irreparable injury will result to his private rights. P. 288.

269 Fed. 235, modified and affirmed.

This suit in equity was begun in the Court of Common Pleas of Cuyahoga County, Ohio, to enjoin a proposed consolidation of the New York Central and Hudson River Railroad Company, the Lake Shore and Michigan Southern Railway Company, and nine other companies, not identified in the bill, and to secure other relief of an incidental nature. The suit was brought by the General Investment Company, a Maine corporation; and the New York Central and Hudson River Railroad Company, the Lake Shore and Michigan Southern Railway Company, the Central Trust Company, and three individuals, called the Read Committee, were named as defendants.

The principal ground on which the proposed consolidation was assailed was that it would contravene the Sherman Anti-Trust Act and the Clayton Act,—both laws of the United States. There were also charges that it would be contrary to the constitution and laws of Ohio and other States, but the general tenor of the bill made it evident that these charges were to be taken as of secondary importance. The plaintiff's right to sue was based on allegations that it was a stockholder in the New York Central Company and the Lake Shore Company and, as such,

would be subjected to irreparable loss and damage should the consolidation be effected.

Process was duly served on the Lake Shore Company and there was a purported service on the New York Central Company; but there was neither service on nor appearance by the other defendants. The New York Central Company, appearing specially for the purpose, promptly challenged the validity of the service on it by moving to set the same aside; but the state court overruled the motion.

In due time the two railroad companies caused the suit to be removed into the District Court of the United States for the Northern District of Ohio. The plaintiff objected to this and reserved an exception to the order allowing it. The removal was sought and allowed on the ground that the suit, according to the claim made in the bill, was one arising under the laws of the United States, and of which the District Courts of the United States are given original jurisdiction. Diversity of citizenship was shown but not specified as a ground for removal.

Shortly after the removal the New York Central Company, again appearing specially for the purpose, sought and obtained in the District Court another hearing on its objection to the purported service on it, and on that hearing the objection was sustained and the service set aside. 226 Fed. 976. Afterwards motions by the plaintiff to remand the suit to the state court, to direct special service on the New York Central Company and other defendants in the mode provided in § 57 of the Judicial Code, and for leave to file a supplemental bill and make new parties defendant were severally overruled. And lastly a motion by the Lake Shore Company, the only defendant then before the court, to dismiss the suit was sustained on the ground that the New York Central Company was an indispensable party, had not voluntarily ap-

peared and was not within the reach of the court's process.

From the decree of dismissal the plaintiff appealed to the Circuit Court of Appeals. That court upheld the rulings setting aside the service on the New York Central Company, denying the motion to remand to the state court, declining to direct special service on the New York Central Company and other defendants, and refusing leave to file a supplemental bill and make new parties. It also sustained the decree of dismissal as to much of the bill, with the qualification that it be without prejudice, and reversed it as to other parts of the bill to which that court thought the Lake Shore Company was the only necessary defendant. 250 Fed. 160.

When the cause was returned to the District Court the plaintiff, complying with a direction that the bill be made certain in a particular in which the Circuit Court of Appeals deemed it uncertain, so amended it as to show the date on which the directors of the Lake Shore and other companies adopted the agreement for the proposed consolidation. The Lake Shore Company then moved that the bill, as left by the decision of the Circuit Court of Appeals, be dismissed on the grounds (a) that in so far as it was directed to securing an injunction against alleged or threatened violations of the Sherman Anti-Trust Act or the Clayton Act the plaintiff had no right or standing to maintain it, or, if having such a right or standing, could not bring it in a state court, as was done, and (b) that, in so far as it was directed against alleged or threatened violations of state constitutions or laws, it did not show a right in equity to the relief sought or any part thereof. This motion was sustained and a decree of dismissal entered. The plaintiff again appealed to the Circuit Court of Appeals and that court affirmed the decree, but without prejudice to the institution in a proper court of a new suit based only on infractions of state

constitutions or laws. 269 Fed. 235. A further appeal brings the case here.

Mr. *Frederick A. Henry*, with whom Mr. *Elijah N. Zoline* was on the brief, for appellant.

Mr. *Walter C. Noyes*, with whom Mr. *Robert J. Cary* and Mr. *S. H. West* were on the brief, for appellees.

MR. JUSTICE VAN DEVANTER, after stating the case as above, delivered the opinion of the Court.

Complaint is made of each of the rulings alluded to in the foregoing statement together with some others. We take them up in their order.

*The setting aside of the purported service on the New York Central Company.*

While the state court considered the objection to the service and overruled it before the removal, this was not an obstacle to an examination of the question by the District Court after the removal. The state court's ruling was purely interlocutory, and its status in this regard was not affected by the removal. Being interlocutory, it was subject to reconsideration and would continue to be so up to the passing of a final decree. Had the cause remained in the state court the power to reconsider would have been in that court, but when the removal was made the power passed with the cause to the District Court. Of course in the latter the ruling was to be treated with respect, but not as final or conclusive. *Garden City Manufacturing Co.* v. *Smith*, 9 Fed. Cas. p. 1153; *Bryant* v. *Thompson*, 27 Fed. 881. And see *Goldey* v. *Morning News*, 156 U. S. 518, 522.

The sheriff returned that he had served the summons on the New York Central Company in Cuyahoga County by delivering a copy to " W. A. Barr, regular ticket agent, in charge of the business of said company." As grounds

for assailing this service the company alleged that it was a New York corporation, had no railroad in Ohio, was not doing business there, did not maintain a place of business or office in that State, and had not made Barr its agent or employee. From the evidence adduced on that issue the District Court, as also the Circuit Court of Appeals, found that the grounds of the company's objection were all true in point of fact. We have examined the evidence and discover no occasion for disturbing the finding. Indeed, we think a different one would have been quite inadmissible. The substance of the evidence is accurately set forth in the opinion of the Circuit Court of Appeals (250 Fed. 165) and need not be repeated here.

It follows that the purported service on this company was invalid and rightly set aside. *Philadelphia & Reading Ry. Co.* v. *McKibbin,* 243 U. S. 264, and cases cited.

*Alleged submission by New York Central Company to court's jurisdiction.*

The plaintiff contends that, even if the service was not good, the company waived the fault and submitted to the court's jurisdiction. Three things are relied on as constituting or showing such a waiver and submission. They are, the petition for removal, a stipulation bringing before the District Court evidence presented in the state court, and a brief filed in opposition to the motion to remand. We think the contention has no support in any of them.

In fact the petition for removal contained an express declaration that the company was " not intending to waive any question of the sufficiency of service or the want of service," but was " reserving all questions of service, jurisdiction and want of service." Besides, it is well settled that a petition for removal, even if not containing such a reservation, does not amount to a general appearance, but only a special appearance, and that after the removal the party securing it has the same right to invoke the decision

of the United States court on the validity of the prior service that he has to ask its judgment on the merits. *Wabash Western Ry.* v. *Brow,* 164 U. S. 271, 279; *Mechanical Appliance Co.* v. *Castleman,* 215 U. S. 437, 441; *Cain* v. *Commercial Publishing Co.,* 232 U. S. 124, 131. The plaintiff insists that, even if that be the usual rule, it is not applicable here, because by this petition the company sought and secured a removal into a District Court other than the one designated by law. But, as will be shown presently, the court to which removal was asked and effected was the proper one. So, whether the petition be judged by what it says or by its legal effect, it did not amount to a general appearance or a waiver of any invalidity in the service.

The stipulation relied on was made between the plaintiff and the New York Central Company and related to the use of specific evidence bearing directly on the validity of the service on the latter. The evidence had been presented at the hearing in the state court on that question, and the purpose of the stipulation was merely to make it, or a report of it, available at a new hearing in the District Court on the same question. The stipulation did not in terms restrict the use to that hearing, but such a restriction inhered in the nature of the evidence specified, and was implied. In the application whereon the new hearing was granted the company had declared that it was appearing specially for the purpose only of questioning the validity of the service. That declaration, made at the outset, applied to and qualified every step taken by the company in bringing the question to a hearing and decision. Joining in the stipulation was merely such a step.

After the service on the New York Central Company was held invalid and set aside, the plaintiff moved that the cause be remanded to the state court. At that time the Lake Shore Company was the only defendant before

the court. A brief by solicitors subscribing themselves as " Solicitors for Defendants " was filed in opposition to the motion. The plaintiff insists this was a general appearance by the New York Central Company. In the body of the brief its authors referred to the absence of any process against or appearance by the Central Trust Company and the members of the Read Committee, recited the proceedings and order whereby the service on the New York Central Company was set aside, said of that company that it " is not now a defendant," spoke of the Lake Shore Company as " now the only real and actual defendant," and otherwise indicated that in filing the brief they were acting for the Lake Shore Company, and for it alone. The plaintiff attaches much weight to the plural term " defendants " in the subscription and gives little consideration to the prior proceedings and the plain purport of the body of the brief. We think all should be considered and that when this is done, it is apparent, as was said by the Circuit Court of Appeals, that the use of the plural term was an inadvertence, the singular being intended. Certainly the plural had no particular reference to the New York Central Company, and yet the plaintiff treats it as including that company but not the Central Trust Company or the members of the Read Committee. This serves to show the fallacy of the claim. If the term included any defendant not then before the court, it included all—one as much as another. But if it be reconciled, as we think it should be, with the prior situation and the general purport of the brief, it becomes evident that it referred, and was intended to refer, to the Lake Shore Company, the only defendant then in the suit, and to it alone.

*Refusal to remand to state court.*

A restatement of the facts bearing on the propriety of this ruling will be helpful. The suit, according to the plaintiff's statement of its case as made in the bill, was one

arising under the laws of the United States, and this was so although the claim to the relief sought was based in part on local constitutions and laws. It also appeared that the matter in controversy exceeded, exclusive of interest and costs, the sum or value of three thousand dollars. Because the suit possessed these elements it was removed from the Common Pleas Court of Cuyahoga County, Ohio, where it had been brought and was pending, into the District Court of the United States for the Northern District of Ohio, which included Cuyahoga County. The removal, which was over the plaintiff's objection and exception, was had on the petition of two defendants, the only ones attempted to be brought before the state court. One of these, the New York Central Company, was a corporate citizen of New York, and therefore not an inhabitant of the Northern District of Ohio,[1] while the other, the Lake Shore Company, was a corporate citizen of Ohio and an inhabitant of the Northern District of that State.

The ground on which the plaintiff moved that the cause be remanded to the state court was that, as the New York Central Company, one of the defendants, was not an inhabitant of the Northern District of Ohio, the suit could not have been originally brought in the District Court for that district, and therefore could not be removed into it from the state court. The motion was denied.

As we shall show, the argument advanced against that ruling confuses venue with general jurisdiction and also confuses the venue prescribed for cases begun in the District Courts with that prescribed for cases removed into them from state courts.

Section 24 of the Judicial Code declares that—

" The district courts shall have original jurisdiction . . . of all suits of a civil nature, at common law or in

---

[1] See *Shaw* v. *Quincy Mining Co.*, 145 U. S. 444.

equity, . . . where the matter in controversy exceeds, exclusive of interest and costs, the sum or value of three thousand dollars, and (a) arises under the Constitution or laws of the United States, or treaties made, or which shall be made, under their authority, or (b) is between citizens of different States, . . ."

This provision covers two distinct classes of suits. In one the distinctive feature consists in the fact that the suit arises under the Constitution, or a law or treaty, of the United States, the citizenship of the parties not being an element; while in the other the distinctive feature consists in the fact that the parties are citizens of different States, the particular basis or ground of the suit not being an element. This suit was within the first class, and, the requisite amount being involved, it came within the general jurisdiction of the District Courts as defined by § 24.

Section 51 deals with the venue of suits begun in those courts and provides, subject to exceptions not material here, that—

". . . no civil suit shall be brought in any district court against any person by any original process or proceeding in any other district than that whereof he is an inhabitant; but where the jurisdiction is founded only on the fact that the action is between citizens of different States, suit shall be brought only in the district of the residence of either the plaintiff or the defendant."

This restriction, as repeatedly has been held, does not affect the general jurisdiction of a District Court over a particular cause, but merely establishes a personal privilege of the defendant, which he may insist on, or may waive, at his election, and does waive, where suit is brought in a district other than the one specified, if he enters an appearance without claiming his privilege. *Central Trust Co.* v. *McGeorge,* 151 U. S. 129; *Interior Construction Co.* v. *Gibney,* 160 U. S. 217; *In re Moore,*

209 U. S. 490, 501; *United States* v. *Hvoslef,* 237 U. S. 1, 12; *Camp* v. *Gress,* 250 U. S. 308, 311.

It therefore cannot be affirmed broadly that this suit could not have been brought against the New York Central Company in the District Court for the Northern District of Ohio, but only that it could not have been brought and maintained in that court over a seasonable objection by the company to being sued there. And the inability of the court to proceed with the cause in the presence of such an objection would not have resulted from any want of power to entertain and determine such a suit between such parties, if they were before it, but only because the company declined to yield the necessary jurisdiction of its person. *Macon Grocery Co.* v. *Atlantic Coast Line R. R. Co.,* 215 U. S. 501, 503, 508.

Respecting the jurisdiction of the district courts on removal from state courts, § 28 of the Judicial Code declares:

"Any suit of a civil nature, at law or in equity, arising under the Constitution or laws of the United States, or treaties made, or which shall be made, under their authority, of which the district courts of the United States are given original jurisdiction by this title, which may now be pending or which may hereafter be brought, in any State court, may be removed by the defendant or defendants therein to the district court of the United States for the proper district. Any other suit of a civil nature, at law or in equity, of which the district courts of the United States are given jurisdiction by this title, and which are now pending or which may hereafter be brought, in any State court, may be removed into the district court of the United States for the proper district by the defendant or defendants therein, being non-residents of that State. . . ."

The next section (29) provides that the removal shall be " into the district court to be held in the district where

such suit is pending "; and § 53 provides that where the district is separated into distinct divisions the removal shall be into the District Court " in the division in which the county is situated from which the removal is made."

Shortly after the original enactment of the removal provisions now embodied in §§ 28 and 29, the meaning of the words " the proper district," found in § 28, was drawn in question; and the courts, on examining the entire statute, very generally reached the conclusion that the words mean the district which includes the county or place where the suit is pending at the time of the removal. Subject to exceptional departures soon disapproved, that view has prevailed ever since,[1] and we regard it as obviously right.

From what has been said it seems plainly to follow that this suit was removable and that the removal was to the District Court for the proper district. But the plaintiff insists that this view does not give due effect to the clause in § 28 " of which the district courts of the United States are given original jurisdiction ", and the provision in § 51 respecting the place of suit or venue. These, it is argued, show that removability is not to be determined by inquiring merely whether the particular suit is one of which § 24 says the District Courts " shall have original jurisdiction," but by inquiring also whether it is one which under § 51 could be brought, over the defendant's objection, in the District Court for the particular district within which

---

[1] See *Ex parte State Insurance Co.*, 18 Wall. 417; *Hess* v. *Reynolds*, 113 U. S. 73; *Knowlton* v. *Congress & Empire Spring Co.*, 14 Fed. Cas. p. 796; *Hyde* v. *Victoria Land Co.*, 125 Fed. 970; *Rubber & Celluloid Harness Trimming Co.* v. *Whiting-Adams Co.*, 210 Fed. 393, 395; *St. John* v. *Taintor*, 220 Fed. 457; *Pavick* v. *Chicago, Milwaukee & St. Paul Ry. Co.*, 225 Fed. 395; *Eddy* v. *Chicago & Northwestern Ry. Co.*, 226 Fed. 120; *New York Coal Co.* v. *Sunday Creek Co.*, 230 Fed. 295; *Ostrom* v. *Edison*, 244 Fed. 228; *Matarazzo* v. *Hustis*, 256 Fed. 882; 885, 892.

it is pending. in a state court.   The argument means, and counsel for plaintiff so claim, that a suit arising under the Constitution, or a law or treaty, of the United States and brought in a state court within a particular federal district is removable if the defendant be an inhabitant of that district, but not if he be an inhabitant of some district in another State—in other words, that in respect of the right to remove such a suit the statute discriminates against defendants who are inhabitants of other States and in favor of those who are inhabitants of the State and district where the suit is pending.   We think the contention runs counter to both the letter and spirit of the statute.

Section 24 contains a typical grant of original jurisdiction to the District Courts in general of " all suits " in the classes falling within its descriptive terms, save certain suits by assignees of particular choses in action.   Section 51 does not withdraw any suit from that grant, but merely regulates the place of suit, its purpose being to save defendants from inconveniences to which they might be subjected if they could be compelled to answer in any district, or wherever found.   Like similar state statutes, it accords to defendants a privilege which they may, and not infrequently do, waive.

Coming to the removal section (28), it is apparent that the clause, "of which the district courts of the United States are given original jurisdiction," refers to the jurisdiction conferred on the District Courts in general, for it speaks of them in the plural.   That it does not refer to the venue provision in § 51 is apparent, first, because that provision does not except or take any suit from the general jurisdiction conferred by § 24; next, because there could be no purpose in extending to removals the personal privilege accorded to defendants by § 51, since removals are had only at the instance of defendants, and, lastly,

because the venue on removal is specially dealt with and fixed by § 29.

There are still other reasons for thinking the venue provision of § 51 has no bearing on removals. First, its own words confine it to suits begun in the District Courts; and next, it cannot be regarded as limiting the right of removal without disregarding the plain import of § 28. That section provides for the removal of suits falling within any one of several classes and declares who shall have the right to remove them. As to the first class, which comprises suits arising under the Constitution, or a law or treaty, of the United States, the right is given to the defendant or defendants without any qualification, while as to the other classes the right is given to the defendant or defendants if he or they be non-residents of the State. Evidently the question of what, if any, limitation in that regard should be attached to the right was considered when the section was in process of enactment and was dealt with therein to the extent that Congress deemed a limitation advisable. Of course, the omission of such a limitation as to suits of the first class, when contrasted with the express imposition of one as to suits of the other classes, means that Congress intended there should be none as to the former.

Prior to the adoption of the Judicial Code with its present arrangement of sections the jurisdictional provisions of § 24 and the venue provision of § 51 constituted the first section of the Act of August 13, 1888, c. 866, 25 Stat. 433, the jurisdictional provisions preceding the other. The removal provision of § 28, with the clause, " of which the circuit courts [1] of the United States are given original jurisdiction," constituted the second section of the same

---

[1] At that period the jurisdiction here discussed was lodged in the Circuit Courts. Afterwards they were abolished by the Judicial Code and the same jurisdiction was lodged in the District Courts.

act. Speaking of that act, and particularly of the meaning of the clause just quoted, this Court on different occasions said the clause referred " to the first part of section one by which jurisdiction is conferred, and not to the clause relating to the district in which suit may be brought," and that " the clause vesting jurisdiction should not be confounded with the clause determining the particular courts in which the jurisdiction must be exercised." *Mexican National R. R. Co.* v. *Davidson,* 157 U. S. 201, 208; *Sweeney* v. *Carter Oil Co.,* 199 U. S. 252, 259. There were also many decisions to the same effect in the circuit courts.[1]

True, that view was departed from in the case of *Ex parte Wisner,* 203 U. S. 449, where the provision relating to the district in which suit may be brought was treated as strictly jurisdictional, not avoidable even by the consent of both parties, and applicable to removals. But much that was said in that case was afterwards disapproved in the case of *In re Moore,* 209 U. S. 490, where the Court returned to its former view, saying (p. 501):

" The contention is that as this action could not have been originally brought in the Circuit Court for the Eastern District of Missouri by reason of the last provision quoted from § 1, it cannot under § 2 be removed to that court, as the authorized removal is only of those cases of which by the prior section original jurisdiction is given to the United States Circuit Courts. But this ignores the distinction between the general description of the jurisdiction of the United States courts and the clause naming

[1] *Fales* v. *Chicago, Milwaukee & St. Paul Ry. Co.,* 32 Fed. 673; *Vinal* v. *Continental Construction Co.,* 34 Fed. 228; *Wilson* v. *Western Union Telegraph Co.,* 34 Fed. 561, 564; *Cooley* v. *McArthur,* 35 Fed. 372; *Kansas City & Topeka Ry. Co.* v. *Interstate Lumber Co.,* 37 Fed. 3; *Baltimore & Ohio R. R. Co.* v. *Meyers,* 62 Fed. 367, 372; *Duncan* v. *Associated Press,* 81 Fed. 417; *Rome Petroleum & Iron Co.* v. *Hughes Specialty Co.,* 130 Fed. 585,

the particular district in which an action must be brought."

That no change in the meaning of the Act of 1888 was intended or wrought by the mere rearrangement of its sections or parts as incorporated into the Judicial Code is shown by §§ 294 and 295 of the Code. See *Brown* v. *Fletcher*, 235 U. S. 589, 597; *United States* v. *Cress*, 243 U. S. 316, 331; *J. Homer Fritch, Inc.* v. *United States*, 248 U. S. 458, 463.

The plaintiff cites the cases of *Tennessee* v. *Bank of Commerce*, 152 U. S. 454; *Cochran* v. *Montgomery County*, 199 U. S. 260, and *In re Winn*, 213 U. S. 458, as holding that to be removable into a particular federal court a suit must be one which as of right could have been brought originally in that court. But those cases are not fairly susceptible of that interpretation. In each a right of removal was claimed and was denied. In the first and third the right was claimed on the ground that the suit was one arising under the laws of the United States; and the denial was put on the ground that the plaintiff's statement of his cause of action, apart from any anticipation of defenses, did not show that it arose under those laws. Because of this, it was said in both cases that the suit could not have been brought originally in the Circuit Court, and therefore could not be removed into it. In the second case the right was claimed on the ground of diversity of citizenship coupled with prejudice and local influence, and the denial was put on the ground that the requisite diversity of citizenship did not exist, the plaintiff and one of the defendants being citizens of the same State. Thus the turning point in each case was that the suit was not one of which the Circuit Courts were given original jurisdiction—in other words, that it could not have been brought in any of them, and not that there was any special obstacle to the exercise of jurisdiction by the particular one to which removal was sought. The opin-

ions in the cases show that the real holding was that the suit was not removable because not within the original jurisdiction conferred on the Circuit Courts in general. Indeed, in the second case it was said to be the established rule that " those suits only can be removed of which the Circuit Courts are given original jurisdiction," and the first case was cited as so holding.   199 U. S. 269.

We conclude that, as the present suit was one arising under the laws of the United States, of which the District Courts are given original jurisdiction by § 24, the defendants were entitled under §§ 28 and 29 to remove it from the state court where it was begun into the District Court for that district, regardless of their citizenship or places of inhabitance, and therefore that the motion to remand was rightly denied.

In presenting this question counsel have treated § 51 of the Judicial Code as regulating the district in which suits under the anti-trust laws may be brought; and our discussion of the question has proceeded on that line.   To avoid any misapprehension it should be observed that § 12 of the Clayton Act (38 Stat. 736) alters that venue provision in respect of such suits, but not in a way which is material here.   Like § 51, the special provision in § 12 does not affect the general jurisdiction of the District Courts, but merely establishes a personal privilege which a defendant is free to waive.

*Refusal to direct special service under § 57 of the Judicial Code on New York Central Company and other defendants.*

This section is in terms restricted to suits " to enforce any legal or equitable lien upon or claim to, or to remove any incumbrance or lien or cloud upon the title to real or personal property " located within the district of suit or partly within that district and partly within another district " within the same State."   As to such a suit it provides that where a defendant is not an inhabitant of

the district, nor found within the same, and does not voluntarily appear, the court may make an order directing such defendant to appear and plead by a day certain, to be fixed in the order; that personal service of the order, if practicable, shall be made on such defendant wherever found, and, if that mode of service be not practicable, service may be had by publication; that the order shall also be served on the person in possession or charge of the property, if any there be, and that after the order has been properly served the court may proceed with the cause, but with the qualification that as against any such defendant not appearing the adjudication shall affect only the property which shall have been the subject of the suit and so located as to be under the court's jurisdiction therein.

It has been doubted that this section applies to suits begun in state courts and removed into federal courts;[1] but this question was not noticed in argument and we find its decision is not essential here.

Obviously the section is confined to suits which are local in the sense of relating directly to specific property, real or personal, within the district of suit or partly therein and partly in another district of the same State. This suit was not within that category. It was not brought to enforce a claim to or lien upon specific property so located, nor to cancel an incumbrance or lien thereon nor to remove a cloud upon the title. On the contrary, as the original bill plainly disclosed, it was brought to enjoin two railroad companies—one having lines both within and without the State in which the suit was begun, and the other having lines without that State—from consolidating, along with nine other companies, into a single corporation. Such a suit is essentially *in personam* and strictly transitory, and is not made

---

[1] See *Adams* v. *Heckscher,* 80 Fed. 742, 744.

any the less so by including in the bill, as was done here, an incidental prayer that the consolidation be annulled if consummated pending the suit. So, tested by the original bill, this suit was not one wherein special service could be had under § 57.

*Denial of leave to file supplemental bill and make new parties.*

The original bill showed that the plaintiff was suing in its own right as a stockholder in the New York Central and the Lake Shore companies to prevent loss and damage which it apprehended would come to it as such stockholder if the consolidation were effected. By the supplemental bill, proffered for filing eight months after the suit was begun, the plaintiff sought, first, to show that in the meantime the consolidation had been effected, that the properties of the consolidating companies had been turned over to the consolidated company and that two mortgages had been executed and delivered by the latter covering all the property received from the Lake Shore Company; secondly, to change the character and object of the suit in such way that the plaintiff would be suing in the right and on behalf of the Lake Shore Company, of which it was a stockholder, with the purpose (a) of having so much of that company's property as was within that district freed from the claim of the consolidated company, (b) of enforcing a restoration of that part of the property to the Lake Shore Company, and (c) of having the two mortgages executed by the consolidated company pronounced void and of no effect as to that part of the property; and, thirdly, to bring in various new parties as defendants.

An application for leave to file a supplemental bill is addressed to the discretion of the court, and the ruling thereon will not be disturbed on appeal unless the discretion has been abused. Under Equity Rule 34 the office of a supplemental bill is to introduce matters oc-

curring after the filing of the original bill, or not then known to the plaintiff. Much more was attempted by the supplemental bill tendered in this instance. By it, as we have shown, the plaintiff sought to shift the right in which it was suing and to change the character and object of the suit. Other matters also had a bearing on the propriety of granting leave to file it. The railroad of the Lake Shore Company extended from Buffalo, New York, to Chicago, Illinois. Its maintenance and operation as a through line was a matter of general concern. To dismember it might work a serious disturbance of both public and private interests. If its inclusion in the consolidation was unlawful, it was so in respect of the entire line. The supplemental bill sought to deal with only a minor part and if sustained would result in restoring that part to the Lake Shore Company while leaving the major part with the consolidated company. At a meeting of the stockholders of the Lake Shore Company at which 459,461 shares were represented the holders of 459,379 shares had voted to ratify the consolidation. The plaintiff held but five shares and had purchased these knowing that the directors had signed the agreement for the consolidation two months before. The ownership of these shares was put forward as entitling the plaintiff to proceed in the right of the Lake Shore Company. No other shareholder was seeking to join in the proceeding. Under the terms of the consolidation the plaintiff could surrender its shares and take five times their par value in stock of the consolidated company; or under a supplemental arrangement it could surrender its shares and receive five times their par value in cash—a sum not alleged to be less than the actual or market value. The shareholders represented by the Read Committee availed themselves of the latter alternative. The Circuit Court of Appeals, considering all these matters, concluded that the action of the District Court in refusing leave to file the supplemental bill was

within the limits of a reasonable discretion and should not be disturbed. We concur in that conclusion.

*Dismissal of original bill on motions of Lake Shore Company.*

In so far as the allegations of fact in the bill need be noticed here they may be summarized as follows: The railroad of the New York Central Company extended from New York City to Buffalo and there connected with the Lake Shore Company's line from Buffalo to Chicago. Continuously since 1898 the New York Central Company had owned more than a majority of the stock of the Lake Shore Company and the Michigan Central Company. For several years the Lake Shore Company had been and it still was the owner of more than a majority of the stock of the Nickel Plate, the Big Four, the Lake Erie, and the Ohio Central companies. The railroad of the Michigan Central Company and those of the several companies a majority of whose stock was owned by the Lake Shore Company were all parallel to and potential competitors of some part or all of the Lake Shore Company's line. All of the lines named were engaged in both intrastate and interstate commerce. The New York Central Company's interest in and control over the Lake Shore and the Michigan Central companies had been acquired and was held with a view to suppressing competition in intrastate and interstate transportation and to restraining such commerce. In furtherance of that purpose the directors of the New York Central, the Lake Shore and nine other companies (the nine were not named in the bill) recently had formulated and signed an agreement for the consolidation of the eleven companies into a single corporation. The agreement called for ratification by stockholders' meetings. It was ratified over the plaintiff's protest at a meeting of the stockholders of the New York Central Company. The stockholders of the Lake Shore Company were intending to act on it at a meeting called

for an early day, and would ratify it over the plaintiff's opposition unless prevented from doing so by an injunction. Out of 2,555,810 outstanding shares in the New York Central Company the plaintiff was the owner of three hundred, which it had purchased two months before the agreement for the consolidation was signed by the directors; and out of 499,961 outstanding shares in the Lake Shore Company the plaintiff was the owner of five, which it had purchased two months after the directors signed the agreement.

The bill prayed that the New York Central Company be enjoined from voting its shares in the Lake Shore Company in favor of the consolidation agreement, or in any other way, or for any other purpose, that the Lake Shore Company be enjoined from permitting the New York Central Company to vote its shares in the former at any meeting of the stockholders, and that the Lake Shore Company be also enjoined from in any way entering into or consummating the proposed consolidation. Other incidental relief was prayed, but it need not be noticed here.

Two motions to dismiss were interposed by the Lake Shore Company and sustained by the District Court—one before and the other after the first appeal to the Circuit Court of Appeals. On that appeal the Circuit Court of Appeals upheld the ruling on the first motion as to part of the bill and reversed it as to the remainder. The second motion was directed against all that remained of the bill and advanced objections thereto which might have been, but were not, urged or considered on the first appeal. The District Court, regarding these as well taken, sustained the second motion, and on the next appeal the Circuit Court of Appeals approved that ruling. These motions gave rise to several distinct questions which we shall take up separately.

*Effect of decision on first appeal.*

The plaintiff takes the position that the partial reversal on the first appeal amounted to an adjudication of the

sufficiency of so much of the bill as fell within the reversal and that the District Court could not thereafter treat its sufficiency as an open question. This position is not tenable. The reversal was put on the ground that the District Court had erred in holding in respect of that part of the bill that the New York Central Company was an indispensable party. Whether that part was rightly subject to other objections, such as afterwards were advanced in the second motion to dimiss, was neither discussed nor decided on that appeal. The opinions delivered on the two appeals make this plain. In that situation it was quite admissible for the District Court, after the case was returned to it, to examine and pass on the objections presented in the second motion, and was likewise admissible for the Circuit Court of Appeals to consider them on the second appeal. *Mutual Life Insurance Co.* v. *Hill,* 193 U. S. 551, 553. And see *Messenger* v. *Anderson,* 225 U. S. 436, 444.

*Was the New York Central Company an indispensable party?*

As to so much of the bill as sought to enjoin the New York Central Company from voting its shares in the Lake Shore Company and to enjoin the latter from permitting it to vote them, we think it is obvious that the New York Central Company was an indispensable party, and that with it neither appearing nor reached by any effective process no other course was open than to dismiss that part of the bill. *Minnesota* v. *Northern Securities Co.,* 184 U. S. 199, 235, 246; *Taylor & Co.* v. *Southern Pacific Co.,* 122 Fed. 147, 152, 154.

As to so much of the bill as sought to enjoin the Lake Shore Company from entering or consummating the proposed consolidation, the New York Central Company plainly was not an indispensable party. Its stockholding interest in the Lake Shore Company did not make its presence essential, its status in this regard being merely

that of the stockholders in general. Nor did its participation in the agreement for the consolidation give it any right which required that it be brought in. At best the agreement was not to be effective unless and until ratified by the stockholders of the several companies. It had not been ratified by the stockholders of the Lake Shore Company and they were under no obligation to ratify it.

*Was plaintiff entitled to sue under the Sherman Anti-Trust Act and the Clayton Act, and, if so, could that right be exercised through a suit brought in a state court?*

In the part of the bill assailed in the second motion to dismiss, as in the bill as a whole, the plaintiff based its right to relief by injunction primarily on the ground that the proposed consolidation would contravene the Sherman Anti-Trust Act, c. 647, 26 Stat. 209, and the Clayton Act, c. 323, 38 Stat. 730, and secondarily on the ground that it would be contrary to the constitution and laws of Ohio and other States.

As respects the Sherman Anti-Trust Act as it stood before it was supplemented by the Clayton Act, this Court has heretofore determined that the civil remedies specially provided in the act for actual and threatened violations of its provisions were intended to be exclusive and that those remedies consisted only of (a) suits for injunctions brought by the United States in the public interest under § 4 and (b) private actions to recover damages brought under § 7. *Minnesota* v. *Northern Securities Co.,* 194 U. S. 48, 71; *Wilder Manufacturing Co.* v. *Corn Products Refining Co.,* 236 U. S. 165, 174; *Paine Lumber Co.* v. *Neal,* 244 U. S. 459, 471; *Geddes* v. *Anaconda Copper Mining Co.,* 254 U. S. 590, 593. The present suit for an injunction, brought by a private corporation in its own interest, was not within those remedies, and so could not be maintained under that act standing alone.

That act was supplemented by the Clayton Act, particularly by its sixteenth section reading as follows:

"That any person, firm, corporation, or association shall be entitled to sue for and have injunctive relief, in any court of the United States having jurisdiction over the parties, against threatened loss or damage by a violation of the anti-trust laws, including sections two, three, seven and eight of this act, when and under the same conditions and principles as injunctive relief against threatened conduct that will cause loss or damage is granted by courts of equity, under the rules governing such proceedings, and upon the execution of proper bond against damages for an injunction improvidently granted and a showing that the danger of irreparable loss or damage is immediate, a preliminary injunction may issue: *Provided,* That nothing herein contained shall be construed to entitle any person, firm, corporation, or association, except the United States, to bring suit in equity for injunctive relief against any common carrier subject to the provisions of the Act to regulate commerce, approved February fourth, eighteen hundred and eighty-seven, in respect of any matter subject to the regulation, supervision, or other jurisdiction of the Interstate Commerce Commission."

This section undoubtedly enlarges the remedies provided in the Sherman Anti-Trust Act to the extent of enabling persons and corporations threatened with loss or damage through violations of that act to maintain suits to enjoin such violations, save in the instances specified in the proviso. This right to sue, however, is granted in terms which show that it is to be exercised only in a "court of the United States." This suit was brought in a state court, and in so far as its purpose was to enjoin a violation of the Sherman Anti-Trust Act that court could not entertain it. The situation was the same in respect of the purpose to enjoin a violation of the Clayton Act.

When a cause is removed from a state court into a federal court the latter takes it as it stood in the former. A want of jurisdiction in the state court is not cured by the removal, but may be asserted after it is consummated. *Cain* v. *Commercial Publishing Co.*, 232 U. S. 124, 131, *et seq.*; *Cowley* v. *Northern Pacific R. R. Co.*, 159 U. S. 569, 583; *De Lima* v. *Bidwell*, 182 U. S. 1, 174; *Lambert Run Coal Co.* v. *Baltimore & Ohio R. R. Co.*, 258 U. S. 377.

It follows that so much of the bill as based the right to relief on asserted violations of the Sherman Anti-Trust Act and the Clayton Act was rightly dismissed; but the dismissal, being for want of jurisdiction, should have been without prejudice.

*Did the bill show a right to relief in equity because of infractions of state constitutions and laws?*

This branch of the suit was loosely set forth and, as was observed by both courts below, there is some ground for thinking the references to state constitutions and laws were merely makeweights. With other matters eliminated, this branch at best was left in a state of relative uncertainty. After commenting on this, the Circuit Court of Appeals said, with ample warrant (269 Fed. 239):

" We next observe that the consolidation sought to be enjoined was only a new formulation of the situation which had been existing for many years. It is expressly averred that the obnoxious control of parallel and competing lines had been accomplished, and for many years maintained, by stock ownership and control. It does not seem to be claimed that the proposed consolidation would create any restraints on competition that did not already exist. We find no definite statement that what was proposed would be obnoxious to any statute or constitutional provision which did not relate to competition between parallel lines, excepting the claim that the proposed consolidation would increase the capital stock and debts above

the permitted limit. It is probable, also, from the silence of the bill, that during all these years the public authorities of the various states have rested content and have not indicated any belief that public policy was being violated, and it may likewise seemingly be inferred that no public authorities are now objecting to the proposed consolidation, but that, on the contrary, they are all content.

"Further, we notice that plaintiff owns only one one-thousandth of 1 per cent. of the capital stock, that no other shareholder has accepted its invitation to join in preventing the imminent irreparable injury, and that this interest plaintiff bought after the consolidation contract was made. He seems to be a volunteer, rather than a conscript. We have, then, a case where a private suitor, with a minimum of ponderable interest, and with no disposition to beware of entrance to a quarrel, is seeking relief upon the sole ground that the public policy of the state is being violated, and where the state authorities have long acquiesced and do acquiesce in any violation there may be. Under such circumstances, the court of equity will be strict in requiring the plaintiff to point out with precision and certainty in what respects the law is about to be violated and to show, clearly and positively, substantial and irreparable injury to its private rights. A measure of imperfection in pleading that might well be overlooked in the ordinary controversy should not be disregarded in such a case as this."

We think this branch of the suit should be tested by the rule of pleading there suggested and that when this is done it is apparent that a right to equitable relief was not shown.

Our conclusion is that the motions to dismiss were rightly sustained. The Circuit Court of Appeals qualified the dismissal by making it without prejudice as to all parts of the bill save one. We have indicated that the qualification should have included that part.

The decree is accordingly modified by making the dismissal without prejudice as to all parts of the bill, and as thus modified it is

*Affirmed.*