## MARLEY v. NATIONAL BANK OF GREECE.

District Court, S. D. New York.
June 5, 1937.

Epstein & Brothers, of New York City, for plaintiff.

Aristotle Souval, of New York City, for defendant.

HULBERT, District Judge.

The defendant is a foreign banking corporation organized and existing under the laws of the Kingdom of Greece.

For some time prior to March 2, 1933, it carried on, in the city of New York, a restrictive and limited banking business pursuant to a license granted to it by the State Banking Department and had, prior to that date, received "four, five or six million dollars" for transmittal to Greece.

In the conduct of that business the defendant had employed an agent, four sub-agents (one of whom was Evangelos T. Hardaloupas), and a staff of about fifty employees. As money was received for transmittal and deposit at the home office in Athens, the agent, or one of the sub-agents, would issue a certificate of deposit repayable in dollars at any *branch*. The defendant's counsel stoutly maintain that the New York office was an *agency* and not a branch.

On July 29, 1932, the Greek Government enacted a compulsory decree that all deposit of foreign moneys with all banks in Greece must be converted into drachmas, at the fixed rate of 100 drachmas to the dollar.

On March 2, 1933, the license to do business in New York expired by limitation and was not renewed. The defendant claims to have ceased doing business on that date, but on March 3, 1933, it executed and delivered a power of attorney to Hardaloupas who, thereafter, maintained an office on the second floor of the premises 51 Maiden Lane, New York, N. Y. His name appeared upon the door as representative of the defendant; the rent and expenses were paid by the defendant after March 2, 1933; Hardaloupas received the mail addressed to the defendant and answered same, and gave information to the depositors of the defendant on the effect of the Greek law which prohibited monies being sent out of Greece; he referred matters presented by customers to the defendant; he assisted certificate holders to apply to the defendant or the Greek authorities to receive their money; he referred the certificate holders to the Hellenic Bank & Trust Company, to prepare application for payment as he had no assistants to do the work; that "several times" he wrote defendant recommending favorable action on the demands for payment. It appeared that only in a few cases the defendant with the permission of the Greek authorities satisfied the claims of the certificate holders in full. In other cases part payment was made and the remainder of the indebtedness was renewed. Whenever loans had been issued to the depositors by the defendant, they were charged against the certificates and the balance was paid in full or in part. The correspondence of Hardaloupas with the claimants was very voluminous. Much wider powers were conferred upon Hardaloupas by the power of attorney, but he claimed he did not exercise them.

This action was commenced in the New York Supreme Court for the County of New York and removed here after a similar motion had been made there and denied. However, that is no bar to the present motion. See General Investment Co. v. Lake Shore & Michigan Southern Ry. Co. et al., 260 U.S. 261, 43 S.Ct. 106, 67 L.Ed. 244.

The plaintiff is the assignee of the executor of the will of George Stavros, who at the time of his death appears to have been a resident of the State of Tennessee, to recover upon two certificates of deposit amounting to $7,000, of which $2,000 matured in 1935 and $5,000 in 1936.

The attempted service of the summons and complaint was made on October 14, 1936, at 51 Maiden Lane, New York, N. Y., where the defendant had its place of business prior to March 2, 1933, and where the Hellenic Bank & Trust Company, a New York corporation, has its place of business and with whom the defendant maintains a loan or current account to make such payments as and when adjusted with the Greek authorities to its former depositors or certificate holders in this country.

John Plastropolous, who had been one of the agents of the defendant prior to March 2, 1933, is the president of the Hellenic Bank & Trust Company. Mr. Hardaloupas is the vice president, and the defendant acquired a substantial part of its capital stock upon its incorporation. Two

copies of the summons and complaint were delivered to Mr. Hardaloupas, one directed to him as agent and representative of the defendant, and the other directed to him as vice president of the Hellenic Bank & Trust Company, as the agent and representative of the defendant, and the motion is to set such service aside.

The defendant places strong reliance upon the case of Compagnie du Port de Rio de Janeiro v. Mead Morrison Mfg. Co. (D.C.) 19 F.(2d) 163.

The defendant therein, a Maine corporation, constructed a pier and coal loading apparatus in Rio de Janeiro under a contract with the plaintiff, a French corporation, which had a concession therefor from the Brazilian Government. The work was done by subcontractors and completed and accepted by the Port Company. Nearly two years later the pier collapsed. The following day a judicial inquiry was instituted under the Brazilian law known as a "vistoria," which appears to be a legal trinity having the character of "an inquest, arbitration and deposition in perpetuam." On the filing of the petition of the Port Company for the appointment of a board consisting of three members, one chosen by each of the parties and the third by the court, notice was given to F. H. Walter & Co., on the theory they were agents of the contractor Mead. Walter & Co. subsequently filed a petition alleging they had previously given up representation of Mead, were unable to accept service of the summons, and prayed that the court cause the suit to be stopped and that the Port Company be notified to "make summons directly on the corporation at its head office by letters rogatory."

No other service was ever made on Mead Morrison Manufacturing Company, or any of its officers or agents, and final judgment was rendered against them by default. Suit was then brought in the United States District Court for the Southern District of Maine by the same plaintiff against the same defendant (Compagnie du Port de Rio de Janeiro v. Mead Morrison Mfg. Co., 19 F.(2d) 163.) Judge Peters decided that the inquiry was open as to whether the Brazilian court had acquired jurisdiction of the defendant and held that a corporation, by engaging in litigation in a foreign state or country, was not doing business in such sense as to render it subject to suit therein, and dismissed the bill.

The distinction, it seems to me, between that case and the one at bar is found in the fact that Mead Morrison & Co. had fulfilled its contract when the pier it had been engaged to construct was completed and accepted and it had no further service to perform when it withdrew from the Brazilian Republic. But here, the defendant had disposed of a great many certificates of deposit to residents of New York and elsewhere in the United States, and at the time its license expired its duty to discharge the obligations created prior to March 2, 1933, did not terminate. That the defendant itself recognized this is demonstrated by reference to the power of attorney to Hardaloupas which, after referring to the termination of the license to do business in New York, states: "But there will remain thereafter certain details to be attended to on behalf of the Bank in concluding matters arising from the above mentioned business."

This case is to be distinguished from those cases in which foreign corporations have never obtained authority to do business in this state and are only represented here by persons of limited authority whose activities in the regular course of their employment cannot be said to justify a finding that the corporation "is here." In my opinion the defendant in this case has been *here* since March 2, 1933, and was here on October 14, 1936, for the purpose of winding up the affairs which originated while it did business in this state under the license aforesaid, and Hardaloupas was the agent and representative and the only person within the state upon whom service could be made pursuant to the provisions of section 229 of the Civil Practice Act of the State of New York.

Motion is denied. Settle order on two days' notice.