## NATIONAL LABOR RELATIONS BOARD v. WALLACE MFG. CO., Inc.

### No. 4275.

Circuit Court of Appeals, Fourth Circuit.

April 5, 1938.

819

Malcolm F. Halliday, Attorney, National Labor Relations Board, of Washington, D. C. (Charles Fahy, Gen. Counsel, Robert B. Watts, Associate General Counsel, and Laurence A. Knapp and Mortimer B. Wolf, Attys., National Labor Relations Board, all of Washington, D. C., on the brief), for petitioner.

L. W. Perrin, of Spartanburg, S. C. (Perrin & Tinsley, of Spartanburg, S. C., on the brief), for respondent.

Before PARKER, NORTHCOTT, and SOPER, Circuit Judges.

PER CURIAM.

This is a petition for a decree enforcing an order of the National Labor Relations Board. Four questions arise for our determination: (1) Whether respondent is subject to the provisions of the National Labor Relations Act, 29 U.S.C.A. § 151 et seq.; (2) whether there was evidence justifying the finding that respondent has interfered with the right of self organization on the part of its employees; (3) whether there was evidence justifying the finding that respondent had discriminated in regard to hire and tenure of employment in the discharge of one Frank Rochester, an employee; and (4) whether the portion of the order directing respondent to withdraw recognition from an employees' organization and disestablish it as a bargaining agency is justified.

On the first question, the evidence is that respondent is engaged in operating a cotton textile manufacturing plant at Jonesville, S. C., with 16,344 spindles and 181 employees. Its plant production has an average annual value of $200,000 and is sold through commission merchants in New York in interstate commerce, being sold on orders f. o. b. the plant. About 75 per cent. of the product is shipped directly out of the state, the remainder being shipped to bleacheries in the state for further processing. Cotton processed at the plant is raised within the state, but fuel and a large part of the machinery used is shipped from without. There is no question but that respondent is subject to the provisions of the act. Mooresville Cotton Mills v. National Labor Relations Board, 4 Cir., 94 F.2d 61; Jeffery-DeWitt Insulator Co. v. National Labor Relations Board, 4 Cir., 91 F.2d 134, 112 A.L.R. 948; National Labor Relations Board v. Friedman-Harry Marks Clothing Co., 301 U.S.

58, 57 S.Ct. 645, 630, 81 L.Ed. 921, 108 A.L.R. 1352.

On the second and third questions, the Board's findings that respondent interfered with the right of self-organization on the part of its employees and that it discharged Frank Rochester because of union membership and activities are clearly supported by evidence which, if believed, is of substantial character; and it is well settled that we have no power to pass upon the credibility of witnesses or to substitute our judgment on questions of fact for that of the Board. The act expressly provides that, "The findings of the Board as to the facts, if supported by evidence, shall be conclusive." Section 10 (e) of the act, 29 U.S.C.A. § 160(e). This, of course, requires support by substantial evidence; but as we pointed out in the recent case of Appalachian Electric Power Co. v. National Labor Relations Board, 4 Cir., 93 F.2d 985, the test of substantiality is the same as that presented on the motion for a directed verdict in a trial at law. We cannot say on this record that the findings of the Board lack such support.

Local No. 2237 United Textile Workers Union was organized at the plant of respondent in June, 1934, and the membership reached a total of 118. After a strike which occurred in September, 1934, there was a marked decline in membership and between July 5, 1935, and September 13, 1935, the membership decreased to 10, with 28 members in arrears in payment of dues but considered in good standing. During the strike in September, 1934, the employees association was organized as a good will association. Its by-laws forbade membership to any member of the union and provided for the handling of complaints and recommendations by its workers with the management of respondent; but the evidence is that during the whole course of its existence it has never functioned as a bargaining agency. There is evidence that the management of the mill was unfriendly to the union and friendly to the association and that some of the overseers attended the organization meeting of the latter. It was given the right to use the buildings of respondent for its meetings although this privilege was denied the union on the ground that the union permitted outsiders, i. e., persons who were not employees of the mill, to attend its meetings. There is evidence that membership in the association was solicited in the mill during working hours and that several employees were given to understand that their jobs depended on their joining. Seventeen members of the union were discharged and two of these were reemployed upon joining the association and giving up their union membership. There is evidence that meetings of the union were spied upon and that the union members became so discouraged that they discontinued the holding of meetings. A special drive was conducted in September, 1935, to increase the association membership; and on September 10th, Frank Rochester, the president of the union and its most active member, was transferred from a department in which he had been working for four years to a temporary position in another department, and on September 13th he was discharged. While the company offers evidence that the discharge was on the ground of inefficiency and disobedience of orders, he testifies that the foreman who discharged him made no such complaint at the time but told him that it was on account of his union membership. This and much of the other evidence is disputed and different inferences can be drawn from many of the facts as to which there is no dispute; but it is not our province, but the province of the Board, to say what evidence is to be believed and what inferences are to be drawn therefrom if it reasonably supports these inferences. National Labor Relations Board v. Pennsylvania Greyhound Lines, Inc., 58 S.Ct. 571, 576, 82 L.Ed. ——; National Labor Relations Board v. Pacific Greyhound Lines, 58 S.Ct. 577, 82 L.Ed. ——.

Likewise, on the fourth question, i. e., the propriety of the portion of the order directing respondent to withdraw recognition from the employees association and disestablish it as a bargaining agency, we think that the Board's finding that the association was not a proper bargaining agency was justified on the evidence and that the order disestablishing it as such was proper. As said by the Supreme Court in National Labor Relations Board v. Pennsylvania Greyhound Lines, Inc., supra:

"In view of all the circumstances the Board could have thought that continued recognition of the Association would serve as a means of thwarting the policy of collective bargaining by enabling the em-

ployer to induce adherence of employees to the Association in the mistaken belief that it was truly representative and afforded an agency for collective bargaining, and thus to prevent self-organization. The inferences to be drawn were for the Board and not the courts. Swayne & Hoyt, Ltd. v. United States, supra [300 U.S. 297, 57 S.Ct. 478, 81 L.Ed. 659]. There was ample basis for its conclusion that withdrawal of recognition of the Association by respondents, accompanied by suitable publicity, was an appropriate way to give effect to the policy of the Act.

"As the order did not run against the Association it is not entitled to notice and hearing. Its presence was not necessary in order to enable the Board to determine whether respondents had violated the statute or to make an appropriate order against them. See General Investment Co. v. Lake Shore & M. S. R. Co., 260 U.S. 261, 285, 286, 43 S.Ct. 106, 116, 67 L.Ed. 244."

. Our conclusion is that the Board is entitled to a decree enforcing its order as entered.

Decree accordingly.