## FEDOR, et v ENAMEL PRODUCTS CO., et

Common Pleas Court, Cuyahoga Co.

No. 497297. Decided June 6, 1940.

Connell, Todia & Sweeney, Cleveland, for plaintiff.

Mooney, Hahn, Loeser, Keough & Freedheim, and Griff, Weiss and Spero, Cleveland, for defendants.

## OPINION

By MERRICK, J.

This is an equitable action brought by plaintiff as president of United Tepco Employees' Union and on behalf of the employees of defendant, the Enamel Products Company. For the sake of brevity in this opinion, the defendant, the Enamel Products Company will be referred to as the employer and The United Tepco Employees' Union will be referred to as the company union.

Plaintiff prays for an injunction restraining the employer from breaching or continuing to breach a written working agreement executed October 18, 1939, between the employer and the employees comprising the membership of the company union. The contract provided a standard of working conditions, seniority rights, arbitration methods and other things effecting the rights and methods of employment of the members of the company union. The company union was not affiliated with any state or national union or federation but had in its membership a large majority of the employer's employees. The contract was in effect from the date of execution and was to run from year to year.

On March 28, 1940. before the expiration of the first year of operation, the employer notified the company union and its members of the company's cancellation or abrogation of the agreement.

Prior to this date of cancellation or abrogation, a complaint had been filed with the National Labor Relations Board charging the employer with unfair labor practices as provided for in Section 10-b of the National Labor Relations Act. The complaint charged that the employer had initiated and organized the company union and had at all times supported and dominated said union and coerced and restrained its employees in the exercise of rights guaranteed in Section 7 of NLRA. The complaint was lodged by the defendant, Local 12139, United Mine Workers of America.

The evidence discloses that some investigation and hearing was had by the NLRB and that the employer was advised by government agents on the staff of the NLRB that the charges were true and substantiated and that a prosecution would be instituted against the employer unless the contract was abrogated.

While the charges were pending a contract or settlement agreement was entered into between the employer and the defendant Local 12139, U. M. W. of A. which will be referred to as the C. I. O. Union. This settlement agreement was executed at the instance of the NLRB and had its approval and provided:—

1. That the employer would not dominate the company union.

2. That the employer would permit other labor organization of its employees.

3. That the employer would permit the employees to join other labor organizations and bargain collectively through such other organization or organizations as provided for in Section 7 of the NLRA.

4. That the company would withdraw any future recognition of the company union and would so advise the membership of the company union.

5. That the company would within 5 days notify the NLRB whether or not it had carried into effect such agreement with the C. I. O. Union.

6. That the C. I. O. Union would withdraw all charges made against the employer under the NLRA. such withdrawal to become effective when the Regional Director is satisfied that the new agreement with the C. I. O. Union had been carried into effect.

7. That the agreement was finally subject to executive approval of the NLRB.

The evidence discloses that at about the time the aforementioned settlement agreement was executed, there was a large and sudden deflection of members of the company union to the C. I.

O. Union. At the time of the hearing of this case, the majority of the employer's employees were members of the C. I. O. Union. A strike is in progress at the present time, the employees being out on strike at the instance of the C. I. O. Union, which claims the exclusive bargaining right on behalf of the employees.

During the time of the investigation of the charges by the NLRB against the employer and just prior to the agreement being executed between the employer and the C. I. O. Union, a meeting of the company union was held. At this meeting it was announced that the NLRB intended to rule that the company union would not be recognized by virtue of its contract with the employer and would not be recognized by the NLRB as a union. Immediately after the meeting, a large majority of the members of the company Union, likewise constituting a large majority of the employees, executed powers of attorney, designating a committee of fellow employees as an exclusive bargaining committee to bargain with the employer. It is interesting to note the following authority set out in the powers of attorney:

"* * * to bargain with our employer * * * in respect to rates of pay, wages, hours and conditions of employment hereby exercising our rights under the National Labor Relations Act, including the matter of collective bargaining * * *."

It will be noted that no action was taken by the company union in organized meeting, but the powers of attorney were executed by the employees as individuals. The officers of the company union encouraged the employees to execute these powers of attorney and joined the others in the execution of them. The powers of attorney were filed for record with the recorder of this county on March 28, 1940, the same date upon which the employer notified the company union of its intention to abrogate the contract which is the subject matter of this litigation.

The question now squarely presented by the joining of the issues herein is whether or not this court should enforce the contract between the employer and the company union and compel compliance therewith. The employer contends that it breached this contract upon the order of and under threats of prosecution by officials of the NLRB. The company union officers are seeking injunctive relief to compel the employer to abide by the contract and are contending among other things, that no final order was ever issued by the NLRB compelling the employer to abrogate the contract.

It is true that no formal order to the employer to abrogate came from the NLRB. The evidence clearly shows that officials of the NLRB made such abrogation a condition precedent to the dropping of prosecution against the employer. Likewise the new contract between the employer and the C. I. O. Union required an abrogation of the old contract with the company union and likewise became inoperative without final executive approval of the NLRB. It seems to this court that the claim of no final order to abrogate by the NLRB is raising a distinction without a difference. Certainly execution of and approval by the NLRB of the contract between the employer and the C. I. O. Union was direct action by the NLRB to order an abrogation of the old company union contract.

Lawyers and courts for centuries have had noble and fixed opinions of the inviolability of contracts and the volumes of case reports are replete with fine and trite expressions carrying those opinions into execution. The advancement of social progress and the changing conditions of our time have left their impressions upon old theories of legal interpretations. Recent decisions of our reviewing courts have thrown some of the ancient theories of contractual rights into discard and oblivion. It may be the privilege of lawyers and laymen to criticize our upper courts, but it is the obligation and duty of the trial court to conscientiously follow them in decision and trend of legal change. The

answer to the question herein raised is found in recent decisions of the Supreme Court of the United States and its interpretations of the rights and powers of the NLRB.

Section 10(a) of the National Labor Relations Act, 49 Stat. 449 reads as follows:

"The board (NLRB) is empowered, as hereinafter provided to prevent any person from engaging in any unfair labor practice (listed in Section 8) affecting commerce. This power shall be exclusive, and shall not be affected by any other means of adjustment or prevention that has been or may be established by agreement, code, law or otherwise."

Section 8 referred to in the NLR Act provides as follows:

"It shall be an unfair labor practice for an employer:—

"* * * to dominate * * * any labor organization or contribute financial or other support to it * * *"

This was the specific complaint which was lodged against the employer and the charge which preceded and led up to the execution of the Settlement Agreement between the C. I. O. Union and the employer.

Did the NLRB have a right to negotiate and approve a settlement agreement or contract between the C. I. O. Union and the employer without taking into consideration the previous contract between the employer and the company Union? The answer to this question is found in the decision of the Supreme Court of the United States in the case of NLRB v Penna. Greyhound Lines, Inc., case No. 413 on the docket of the October Term. 1937, and decided February 28, 1938. The following language is taken from the opinion:

"As the order did not run against the association it is not entitled to notice and hearing. Its presence was not necessary in order to enable the board to determine whether respondents had violated the statute or to make an appropriate order against them. See Gen. Inv. Co. v L. S. & M. S. Ry. Co., 260 U. S., 261, 285—286."

The association referred to above was a company union and an order had been issued to the employer by the NLRB to abrogate the contract.

It seems therefore that the Supreme Court of the United States in the above case has determined that a company union is not entitled to notice of this type of complaint or the proceedings thereafter following. It follows therefore that the company union need not be a party to any settlement of such charge or charges, even though the settlement agreement resulted in substance in the same result as an order of the NLRB—viz:—an abrogation of the contract with the company union by the employer.

A more recent decision of the Supreme Court of the United States definitely settles the question revolving around the authority of the NLRB to declare void contracts between employers and company unions without any others affected being made parties to the proceeding. National Licorice Co. v NLRB, Supreme Court of the United States, Case 272, October Term, 1938, decided March 4, 1940.

Following the United States Statutes creating the NLRB and granting it powers and the recent decisions of the Supreme Court of the United States cited herein and applying such statutes and interpretations thereof to the facts in this case, this court finds:

1. State courts have no jurisdiction in any matter concerning labor relations wherein the NLRB has intervened to any extent or in any capacity under the NLR Act except in actions revolving around the right to strike or picket.

2. The parties plaintiff had and have an adequate remedy under the NLR Act which gives them the right to protest to the NLRB and also to have any action of the NLRB reviewed by the United States Courts as provided in the NLR Act.

3. Under the NLR Act and interpretations of it as set forth by the Supreme Court of the United States as cited above, the power of the NLRB to abrogate unfair labor contracts and act thereon is exclusive and can not be enjoined, affected or modified by any court other than by the procedure set forth in the NLR Act. Such procedure is restricted and confined to United States courts of varying jurisdictions.

For the reasons set forth herein, this court is without jurisdiction and the petition will be dismissed at plaintiff's costs.