**CREAGER v. P. F. COLLIER & SON CO. et al.**

District Court, S. D. Texas, Brownsville Division. December 16, 1929.

Nos. 640, 641.

Kennerly, Williams, Lee, Hill & Sears, of Houston, Tex., for plaintiff.

Seabury, George & Taylor, of Brownsville, Tex., and Fulbright Crooker & Freeman, of Houston, Tex., for defendants.

HUTCHESON, District Judge. This is a hearing on a motion, which, though in form a motion to quash and set aside service, in effect challenges the jurisdiction of this court. Rosenberg Bros. v. Curtis Brown Co., 260 U. S. 516, 43 S. Ct. 170, 67 L. Ed. 372; Lumiere v. Wilder, Inc., 261 U. S. 176, 43 S. Ct. 312, 67 L. Ed. 596; Bank of America v. Whitney Bank, 261 U. S. 171, 43 S. Ct. 311, 67 L. Ed. 594; Henderson v. Richardson Co. (C. C. A.) 25 F.(2d) 226.

For the plaintiff it is claimed that jurisdiction has attached as a result of service of the writ at Houston, Tex., within the Southern district of Texas, upon F. C. Spalding as agent of P. F. Collier & Son Company. For the defendant P. F. Collier & Son Company it is claimed that the service is invalid and ineffective because said company is not present in the Southern district of Texas nor is Spalding its agent there.

Upon the two points raised by the motion much evidence was taken in the form of affidavits, depositions, and physical exhibits, including testimony both orally and by deposition of Spalding, testimony by deposition and by affidavit of F. E. Smalley upon whom the process quashed in Creager v. Collier, 36 F.(2d) 781, because of service outside of the Southern district of Texas, was served, affidavits of the assistant treasurer of the defendant "Son" company and the president of the codefendant, the distributing company,

and depositions of persons who had dealt or claimed to have dealt with the defendant "Son" company. There was also introduced in evidence certificates of incorporation of the two defendants, P. F. Collier & Son Company and P. F. Collier & Son Distributing Corporation, and the contract between the distributing corporation and Spalding, together with checks paid him from time to time by that company.

The affidavits of George J. Kennedy, president of the Collier & Son Distributing Corporation, and of Charles J. Bevan, assistant treasurer of Collier & Son Company, are brief and, since they purport to exactly declare defendant's position, are here set out in full:

"George J. Kennedy, being duly sworn, deposes and says: That he is an officer of the defendant P. F. Collier & Son Distributing Corporation, to wit: its President.

"P. F. Collier & Son Distributing Corporation is a corporation organized under the laws of the State of New Jersey and has its principal office at No. 250 Park Avenue, New York City. It is authorized to do business in the State of New York and also in the State of Texas, having a local office at Dallas, Texas, in charge of its branch manager there, Mr. F. E. Smalley; that F. C. Spaulding is in the employ of P. F. Collier & Son Distributing Corporation as a collector and has an office in Houston, Texas.

"The business of P. F. Collier & Son Distributing Corporation in the State of Texas consists in the sale and delivery of books purchased in Texas by citizens and residents of Texas from P. F. Collier & Son Distributing Corporation. The books so sold and delivered in Texas are bought in New York by P. F. Collier & Son Distributing Corporation from P. F. Collier & Son Company.

"The business of P. F. Collier & Son Distributing Corporation consists further in soliciting subscriptions to various magazines and newspapers among which is Collier's The National Weekly, which the P. F. Collier & Son Distributing Corporation buys from P. F. Collier & Son Company. The agents of P. F. Collier & Son Distributing Corporation solicit and secure subscriptions to Collier's The National Weekly in Texas and the same are forwarded to the subscription department of P. F. Collier & Son Company in Springfield, Ohio, which thereafter delivers the newspapers by mail to the subscribers.

"The business of P. F. Collier & Son Distributing Corporation with P. F. Collier & Son Company is carried on precisely as the business of P. F. Collier & Son Distributing Corporation with any other individual or corporation. Each corporation keeps a complete set of books and enters therein all transactions between them. P. F. Collier & Son Distributing Corporation hires its own employees and pays their salaries, maintains its local offices and pays the rent therefor, files tax reports and pays taxes in the State of Texas. The defendant P. F. Collier & Son Distributing Corporation is not the agent of P. F. Collier & Son Company in the State of Texas or in any other State, but is engaged in business in Texas independently and wholly as principal."

"Charles J. Bevan, being duly sworn, deposes and says: That he is an officer of P. F. Collier & Son Company, to wit: Assistant Treasurer.

"P. F. Collier & Son Company is a corporation organized under the laws of Delaware and has its principal office at No. 250 Park Avenue, New York City. The said company is authorized to do business in the State of New York, but is not authorized to do and does not transact business in any other state of the United States. It is not authorized to do business in Texas, has no office or agent in the State of Texas, and never has had an office or agent in the State of Texas.

"Deponent further says that F. C. Spaulding is not now and never has been and was not at the time of the alleged service of the citation upon him herein the President or Vice-President or Secretary or Treasurer or General Manager or local or travelling agent or travelling salesman of P. F. Collier & Son Company; that said F. C. Spaulding is not now and never at any time has been in the employ of or in any way connected with P. F. Collier & Son Company.

"The business of P. F. Collier & Son Company is the publication of a weekly newspaper known as Collier's The National Weekly. The said newspaper is edited in New York and printed in Springfield, Ohio, and distributed from the printing plant to subscribers by mail, and to news dealers by mail and by express and by freight.

"The business of P. F. Collier & Son Company also consists of the manufacture and sale of books in sets, such as 'Doctor Eliot's Five Foot Shelf of Books.' These books are sold in New York to the defendant P. F. Collier & Son Distributing Corporation and shipped from commercial binderies in various sections of the United States out-

side of Texas on the order of P. F. Collier & Son Distributing Corporation, to the branch offices of P. F. Collier & Son Distributing Corporation throughout the United States. No sales or deliveries of such books or sets of books are made by P. F. Collier & Son Company, except as here stated to P. F. Collier & Son Distributing Corporation.

"The publication of Collier's The National Weekly and books as above described constitute the whole of the business of P. F. Collier & Son Company, no part of which is carried on in the State of Texas."

On behalf of plaintiff, while the affidavit of F. E. Smalley was to the effect that he was manager of the Dallas Branch of P. F. Collier & Son Distributing Corporation, that he is not now and never has been employed by Collier & Son Company nor in any way connected with it, there are facts and circumstances in evidence which tend strongly to support the conclusion that Smalley acts in Dallas on behalf not only of the Collier & Son Distributing Corporation but of the Collier & Son Company, and if the question here were whether Collier & Son Company were doing business in the Northern district of Texas with Smalley as its agent, so as to be present and suable in that district, the case would present a serious and difficult question.

Strong points in plaintiff's case upon the point of suability of defendant "Son" company in the Northern district of Texas are not only the fact that Mr. Blades was referred to Smalley as the agent of P. F. Collier & Son Company; the fact that all correspondence which Smalley had with New York about these suits was with Kennedy as an officer, not of the distributing corporation, but of the "Son" Company; the fact that Smalley acts as manager of "The Readers' Cooperative Service Bureau conducted by P. F. Collier & Son Company," but the fact, which seems to me to be of marked significance, that, though in his affidavit Kennedy declares that the orders obtained by the distributing corporation are forwarded to the circulation department at Springfield, Ohio, of P. F. Collier & Son Company, Smalley in his deposition states in answer to the question:

"Q. What is the address of your New York Office? A. 250 Park Avenue.

"Q. Is that the only place with which you correspond? A. No, I also correspond with Springfield, Ohio.

"Q. Why did you not send papers to Springfield? (Referring to the subpoenas

served in this suit.) A. I carry all my business except records, that is the only thing I send to Springfield, copies of reports from my branch; they keep the branch records there and I send my records there.

"Q. To what office do you remit funds? A. New York, at 250 Park Avenue."

Now, the evidence shows that 250 Park avenue is the office of both of the companies, but there is no evidence on the part of the defendants except the statement of Smalley that the distributing corporation has any office in Springfield, Ohio, and the letterheads of the distributing corporation offered in the case show no office there, while the affidavit of Kennedy declares that the office maintained at that place is the office of P. F. Collier & Son Company. In the face of that declaration, the statement of Smalley that his office is a branch of that office, and that he sends his records there, is very significant upon the contention that he is either representing both companies without knowing the difference or is representing both companies knowing the difference; the business of the two companies being so intermingled as that each uses Smalley for that part of the business which each does on its own account in the Northern district of Texas. While this testimony and the letter of the Collier & Son Company to Mr. Blades referring matters to Smalley as their manager in Texas and the activities of the Readers' Cooperative Service Bureau, Smalley, Manager, all tend to point very strongly to the fact that Smalley does in some respects represent Collier & Son Company, whether enough to constitute their being present in the state through him is not now before me to decide.

Turning now to the questions, which are the only ones before me, of whether Collier & Son Company are doing business in the Southern district of Texas and whether Spalding is their agent there, upon both of these points I think the evidence overwhelmingly against plaintiff.

On these points the evidence is as follows: F. E. Smalley deposes by affidavit that F. C. Spalding of Houston is the local agent in Houston of P. F. Collier & Son Distributing Corporation; that he was so employed by said Smalley; that he works on a percentage basis as a collecter for Collier & Son Distributing Corporation and makes all his reports to said Smalley at his office; that the said Collier & Son Distributing Corporation maintains an office in the city of Houston, pays the rent on it; and that Collier & Son Company have nothing to do with the

office nor with the payment of any of its expenses, including the commissions earned by Spalding. He further swears that Spalding was not the president, vice president, secretary, treasurer, general manager, local or traveling agent, or traveling salesman of P. F. Collier & Son Company. The testimony of Spalding taken by deposition and orally before me discloses that until the matter was called to his attention by this suit he had never known of the existence of more than one P. F. Collier & Son corporation; that to the best of his recollection this corporation was the P. F. Collier & Son Distributing Corporation, but that he often referred to it in short as P. F. Collier & Son and did not know or realize the significance of the names "P. F. Collier & Son Company" and "P. F. Collier & Son. Distributing Corporation." The written contract under which he was working was introduced in evidence and shows to have been signed by P. F. Collier & Son Distributing Corporation, as were also checks issued to him before this controversy arose and signed altogether by the distributing corporation. While there was evidence that from time to time Spalding performed some work for the Dallas office, to which, and to Mr. Smalley as the head of it, he alone reported, which, upon plaintiff's theory, was work in which Collier & Son Company, as distinguished from the distributing corporation, was interested, there was no evidence that he ever performed this work except as agent for the Collier & Son Distributing Corporation, and none whatever that he was ever authorized as the agent of P. F. Collier & Son Company to do or transact any business for it as agent. While there is evidence that he did receive two checks payable to P. F. Collier & Son signed by Fred L. Williams, these checks were sent by him to Dallas and are indorsed by P. F. Collier & Son Distributing Corporation, nor, if it would be material, is there any evidence whatever that these checks were paid to him under any different conditions than the others which, as agent for the distributing corporation, he collected.

In addition, while much was made by plaintiff of the activities of Smalley in connection with the conduct in Texas of "The Readers' Cooperative Service Bureau conducted by P. F. Collier & Son Company, 250 Park Avenue, New York, N. Y.," there is no evidence that Spalding ever had anything whatever to do with the conduct of this bureau or, except incidentally as shown above, with any matters even related to Collier & Son Company, while all of the correspondence in evidence to or from the "Son" company refers uniformly to Smalley and never to Spalding.

In this state of the record I think it perfectly clear that defendant "Son" company may not be subjected to the jurisdiction of this court, for, whatever may have been the state of the law in its earlier enunciation, it is now definitely settled that jurisdiction over a foreign corporation may be asserted only when facts are presented which show not merely a doing of business of some kind in the district of suit but such a doing of business there as that the inference may be fairly drawn that the corporation is there present, and, further, that the person, by the service on whom jurisdiction is claimed, must in a real sense represent the corporation there.

While the test was first declared in the Green Case, 205 U. S. 530, 27 S. Ct. 595, 596, 51 L. Ed. 916, in the language, "Its validity depends upon whether the corporation was doing business in that district in such a manner and to such an extent as to warrant the inference that, through its agents, it was present there," so great was the confusion created by the varying results arrived at in the application of the test in the cases following, notably St. Louis Southwestern Ry. Co. v. Alexander, 227 U. S. 218, 33 S. Ct. 245, 57 L. Ed. 486, International Harvester Co. v. Kentucky, 234 U. S. 579, 34 S. Ct. 944, 58 L. Ed. 1479, and Philadelphia & Reading Ry. Co. v. McKibbin, 243 U. S. 265, 37 S. Ct. 280, 61 L. Ed. 710, that Judge Cochran, in what he calls "an adventure in interpretation," was moved, in a long and exhaustive opinion, Farmers' & Merchants' Bank v. Federal Reserve Bank (D. C.) 286 F. 566, 588, to reach the conclusion that in the last analysis the test of jurisdiction was the determination of the reasonableness of its exercise. "If," he says "it is reasonable that it be exercised, it exists. If, on the other hand, it is not reasonable, it does not exist. This fundamental principle lies at the basis of these decisions." While such a subjective criterion is perhaps desirable in matters of due care and others of similar import, questions of jurisdiction vel non ought to be determined by considerations more objective and less unstable and, fortunately for the law, the Supreme Court has, in a series of decisions upon facts, varying in detail in each case, yet, in their composite, presenting the basis of a fairly workable test of jurisdiction, pricked out the law.

This process first definitely commenced with Philadelphia & Reading Ry. Co. v. Mc-

Kibbin, 243 U. S. 265, 37 S. Ct. 280, 61 L. Ed. 710, where Mr. Justice Brandeis, for the court, summed the matter up:

"A foreign corporation is amenable to process to enforce a personable liability, in the absence of consent, only if it is doing business within the state in such manner and to such extent as to warrant the inference that it is present there. And even if it is doing business within the state, the process will be valid only if served upon some authorized agent. St. Louis Southwestern R. Co. v. Alexander, 227 U. S. 218, 226, 57 L. Ed. 486, 488, 33 S. Ct. 245, Ann. Cas. 1915B, 77. Whether the corporation was doing business within the state, and whether the person served was an authorized agent, are questions vital to the jurisdiction of the court. A decision of the lower court on either question, if duly challenged, is subject to review in this court; and the review extends to findings of fact as well as to conclusions of law."

In 246 U. S. 79, 38 S. Ct. 233, 235, 62 L. Ed. 587, Ann. Cas. 1918C, 537, People's Tobacco Co. v. American Tobacco Co., the test was again laid down in an energetic and vigorous way in the following language:

"The question as to what constitutes the doing of business in such wise as to make the corporation subject to service of process has been frequently discussed in the opinions of this court, and we shall enter upon no amplification of what has been said. Each case depends upon its own facts. The general rule deducible from all our decisions is that the business must be of such nature and character as to warrant the inference that the corporation has subjected itself to the local jurisdiction, and is by its duly authorized officers or agents present within the state or district where service is attempted."

Following these cases, in 260 U. S. 516, 43 S. Ct. 170, 171, 67 L. Ed. 372, Rosenberg Bros. & Co., Inc., v. Curtis Brown Co., Mr. Justice Brandeis applied the same test to these facts: The president of an Oklahoma corporation was in New York on the business of buying goods. The business of his corporation in New York was from time to time to buy a large part of the merchandise which it sold at its stores in Tulsa.

"Whether, at the time its president was served with process, he was in New York on business or for pleasure, whether he was then authorized to transact any business there, and to what extent he did transact business while there, are questions on which much evidence was introduced, * * * but the issues so raised are not of legal significance. * * *

Visits on such business, even if occurring at regular intervals, would not warrant the inference that the corporation was present within the jurisdiction of the state. * * *

"The sole question for decision is whether, at the time of the service of process, defendant was doing business within the state of New York in such manner and to such extent as to warrant the inference that it was present there. * * * The District Court found that it was not. That decision was clearly correct."

The same principle was applied in General Investment Co. v. Lake Shore & M. S. Ry. Co., 260 U. S. 267, 43 S. Ct. 106, 67 L. Ed. 244, citing and approving the same case (D. C.) 250 F. 164, where the question is fully treated.

In 261 U. S. (43 S. Ct., 67 L. Ed.) came a series of decisions which again announced and applied the doctrine and further clarified the meaning of the test laid down. Minnesota Assn. v. Benn, 261 U. S. 140, 43 S. Ct. 293, 67 L. Ed. 573, opinion by Mr. Justice McReynolds, and Bank of America v. Whitney Bank, 261 U. S. 171, 43 S. Ct. 311, 67 L. Ed. 594, in which the test was again stated: "The sole question for decision is whether, at the time of the service of the process, defendant was doing business within the district in such manner as to warrant the inference that it was present there." And it was held that it was not so present, though the Whitney Central carried large deposits in many banks in New York and transacted a great deal of its business there. The Supreme Court, Justice Brandeis speaking, said: "Its regular New York business was transacted for it by its correspondents—the six independent New York banks. They, not the Whitney Central, were doing its business in New York. In this respect their relationship is comparable to that of a factor acting for an absent principal. The jurisdiction taken of foreign corporations, in the absence of statutory requirement or express consent, does not rest upon a fiction of constructive presence, like 'qui facit per alium facit per se.' It flows from the fact that the corporation itself does business in the state or district in such a manner and to such an extent that its actual presence there is established. That the defendant was not in New York and, hence, was not found within the district is clear."

In 267 U. S. 333, 45 S. Ct. 250, 69 L. Ed. 634, Cannon Mfg. Co. v. Cudahy Co., it was sought to hold the Cudahy Company liable through the service on an agent of a subsidi-

ary company, and the court, repeating the same test, "The main question for decision is whether, at the time of the service of process, defendant was doing business within the state in such a manner and to such an extent as to warrant the inference that it was present there. Bank of America v. Whitney Central National Bank, 261 U. S. 171, 43 S. Ct. 311, 67 L. Ed. 594," held that though the defendant company, through ownership of the entire capital stock and otherwise, dominated the Alabama corporation, and though the corporate structure was, though real, largely merely formal, jurisdiction could not be asserted because the corporation was not within the state. The court said:

"The obstacle insisted upon is that the court lacked jurisdiction because the defendant, a foreign corporation, was not within the state. * * *

"The defendant wanted to have business transactions with persons resident in North Carolina, but for reasons satisfactory to itself did not choose to enter the state in its corporate capacity. It might have conducted such business through an independent agency without subjecting itself to the jurisdiction. Bank of America v. Whitney Central National Bank, 261 U. S. 171, 43 S. Ct. 311, 67 L. Ed. 594. It preferred to employ a subsidiary corporation."

In James-Dickinson Farm Mortgage Co. v. Harry, 273 U. S. 119, 47 S. Ct. 308, 71 L. Ed. 569, the court again, Justice Brandeis speaking, applied the test, and the Supreme Court, with Mr. Justice Sanford speaking, in Eastman Kodak Co. v. Southern Photo Material Co., 273 U. S. 359, 47 S. Ct. 400, 403, 71 L. Ed. 684, made it finally clear by express declaration that the *mere doing of business* in a state is not sufficient to confer jurisdiction; that there must be something a great deal more. That case was a suit under section 12 of the Clayton Act (15 USCA § 22), authorizing suit in any place where the corporation transacts business. The Supreme Court declared that under that section jurisdiction attached, though under the general law, controlling jurisdiction over foreign corporations in a state, jurisdiction would not attach, the court, citing General Investment Co. v. Lake Shore Ry. Co., 260 U. S. 261, 43 S. Ct. 106, 67 L. Ed. 244, saying:

"And we think it clear that, as applied to suits against corporations for injuries sustained by violations of the Anti-Trust Act, its necessary effect was to enlarge the local jurisdiction of the district courts so as to establish the venue of such a suit not only, as theretofore, in a district in which the corpo-

ration resides or is 'found,' but also in any district in which it 'transacts business'—although neither residing nor 'found' therein. * * *

"And, further, that a corporation is engaged in transacting business in a district, within the meaning of this section, in such sense as to establish the venue of a suit—although not present by agents carrying on business of such character and in such manner that it is 'found' therein and is amenable to local process—if in fact, in the ordinary and usual sense, it 'transacts business' therein of any substantial character."

And again on page 371 of 273 U. S., 47 S. Ct. 402, 71 L. Ed. 684, the distinction is further made clear:

"In People's Tobacco Co. v. Am. Tobacco Co., 246 U. S. 79, 84, 86, 38 S. Ct. 233, 234, 62 L. Ed. 587, Ann. Cas. 1918C, 537, * * * it was held that [section seven] as applied to a corporation sued in a district in which it did not reside, required that it 'be present in the district by its officers and agents carrying on the business of the corporation,' this being the only way in which it could be said to be 'found' within the district; that to make it amenable to service of process in the district, the business must be of such nature and character as to warrant the inference that it had subjected itself to the local jurisdiction, and was by its duly authorized officers or agents present therein."

These authorities leave no room for doubt that whatever might be said upon the question of whether Collier & Son Company through the activities of the Readers' Cooperative Service Bureau, or through any other activities, is present in the Northern district of Texas and there represented by Smalley, it is entirely clear that it is not present through nor represented in any activities in the Southern district of Texas by Spalding as agent.

In addition to the insistence that Spalding is the agent of the defendant P. F. Collier & Son Company, plaintiff insists that the defendant P. F. Collier & Son Distributing Corporation is doing business in the state as an agent for P. F. Collier & Son Company and that service upon Spalding, its agent, is adequate service upon the "Son" company. Whether, if the evidence showed that Collier & Son Distributing Corporation was acting as agent for Collier & Son Company, service upon Spalding would be good service upon Collier & Son Company, is not necessary for me to decide, for I think the evidence is overwhelming that Collier & Son Distributing

Corporation does not act as agent for Collier & Son Company, but that it acts for itself as the subsidiary of the Collier & Son Company, through which, by selling to it, Collier & Son Company transacts much of its business, and that the case is controlled by Cannon v. Cudahy Company, 267 U. S. 333, 45 S. Ct. 250, 69 L. Ed. 634; People's Tobacco Company v. American Tobacco Co., 246 U. S. 79, 38 S. Ct. 233, 62 L. Ed. 587, Ann. Cas. 1918C, 537; Peterson v. Chicago, Rock Island & Pac. Ry. Co., 205 U. S. 364, 27 S. Ct. 513, 51 L. Ed. 841; and a late case in the Sixth Circuit, Selbert v. Lancaster Chocolate & Caramel Co. (C. C. A.) 23 F.(2d) 233.

Finding no evidence either that defendant "Son" company is present in the Southern district of Texas or has an agent here, it follows that by the process issued and served on Spalding this court acquired no jurisdiction over it, and that the motion of the defendant should be sustained.