## PIONEER UTILITIES CORPORATION v. SCOTT–NEWCOMB, Inc.

### Civ. No. 182.

District Court, E. D. New York.
Feb. 14, 1939.

Weinstein & Levinson, of New York City (Frank Weinstein and Samuel J. Levinson, both of New York City, of counsel), for plaintiff.

White & Case, of New York City (Chester Bordeau, of New York City, of counsel), for defendant.

GALSTON, District Judge.

On the removal of this action, which was commenced in the Supreme Court, Kings County, to this court, the defendant appearing specially moves for an order vacating and setting aside the service of a summons on the ground that the defendant is a foreign corporation, not transacting business in the State of New York or within the jurisdiction of this court.

The summons with notice of demand for judgment was served upon Joseph P. Feeley, vice president and general manager of the defendant, on July 1, 1938. On July 11, 1938 the defendant moved for an order vacating the service on the same grounds as are advanced on this motion. The motion was denied. 7 N.Y.S.2d 292. The defendant appealed from the order of the Supreme Court and on November 28, 1938 the Appellate Division, Second Department, affirmed the order. 255 App.Div. 885, 7 N.Y. S.2d 970. On December 14, 1938 the defendant appeared in the action in the Supreme Court for the removal of the cause to this court, the attorneys designating themselves "attorneys for defendant".

The defendant urges that the fact that the state court has ruled on its application is not conclusive on this court, General Investment Co. v. Lake Shore Ry. Co., 260 U.S. 261, 43 S.Ct. 106, 67 L.Ed. 244, for a federal question is presented. It is stated in Lillibridge, Inc. v. Johnson Bronze Co., 220 App.Div. 573, 222 N.Y.S. 130, 132: "In reaching a conclusion as to whether the defendant was doing business within this state, we must turn to the federal authorities, since these are binding upon us as the question involves the due process clause of the federal Constitution. See [U. S.C.A.] Const. Amend. 14, § 1."

And it was held in Erie Ry. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 822, 82 L. Ed. 1188, 114 A.L.R. 1487, that the law to be applied in cases involving jurisdiction arising out of diversity of citizenship is the law of the state, "except in matters governed by the Federal Constitution or by Acts of Congress." That brings us to an examination of the facts.

The record on removal includes the record before the Appellate Division. From the affidavits therein it appears that the parties to the action entered into an agreement on April 5, 1937 to which was attached a supplemental agreement executed on May 27, 1937. The defendant is therein designated as a manufacturer desirous of distributing its products within the Counties of New York, Kings, Queens, Bronx and Richmond, and the plaintiff is designated as the exclusive distributor for such territory. The defendant manufactures oil burners and air conditioning apparatus and equipment relating thereto.

Joseph P. Feeley, upon whom process was served in this action, is vice president in charge of sales of the defendant. He says that his duties as vice president require that he travel throughout the United States and Canada to confer with dealers having contracts similar to that made between the parties hereto.

Samuel Kobre, president of the plaintiff corporation, in his affidavit sets forth that the State of New York is one of the principal outlets for the sale of the defendant's products; that for a number of years it has entered into contracts with distributors in the City of New York and has divided the City into various territories and among different distributors. Kobre refers to a contract which was made on May 4, 1935 by the defendant with himself and Harry Weinstein. That contract was signed on behalf of the defendant, as is the contract in this case, by Lewis L. Scott, its president, and was signed and delivered in the State of New York. The contract provided for a ten year term and designated Kobre and Weinstein as major dealers with exclusive rights to sell the defendant's products in the Counties of Kings and Queens.

A similar contract was entered into by the defendant in the City of New York through its president, Lewis L. Scott, with Harvey Lewis and Harold Williams, and the territory assigned to them was Nassau and Suffolk Counties. Scott also made a like contract with Louis E. Marron, a dealer, for rights within the County of Rockland.

On July 10, 1935 another contract was entered into in the City of New York between the defendant through its president, Scott, with Kobre and Weinstein, modifying the contract of May 4, 1935, and similar agreements of modification were entered into on the same day in the City of New York by the defendant through its president with Lewis, Williams and Marron.

The Kobre affidavit refers also to a contract made on June 26, 1935, again in the City of New York, between the defendant and Marron and Lewis, which contract was signed on behalf of the defendant by Joseph P. Feeley, its vice president. The contract

was acknowledged by Feeley in the City of New York.

Feeley lived in Flushing, Long Island, and it is averred that this residence was used as the defendant's New York office. Kobre communicated with the defendant through Feeley at Flushing, Long Island, by writing him and telephoning him there. It is said that the defendant kept various stationery and printed forms of contract in Feeley's residence and its stamped return envelopes with the name "Scott-Newcomb, Inc." in the left hand corner. Kobre alleges that on or about July 5, 1935 Feeley informed him that any time he wanted to get in touch with the defendant he could communicate with Feeley at 35-11 167th Street, Flushing, Long Island, as that was the sales office of the defendant for the State of New York, and that it was there that he kept a record of all sales in the State of New York, and for Feeley's convenience Kobre sent Feeley a filing cabinet. Subsequently Feeley moved to 47-11 Ash Avenue, Flushing. In a report made by one William Berg, a certified public accountant, in connection with defendant's contract with Marron and Lewis, Berg examined the books of account, records and other data of the defendant and reported on May 22, 1935, among other things: "I am advised that Mr. Feeley has a great number of other contracts from dealers at his office in New York and that other franchise contracts will be coming in regularly from now on."

A letter written by Feeley's wife on February 15, 1937 to the plaintiff on the letterhead of the defendant refers to Feeley's absence from "his New York office". As at December 31, 1934 there were 12,580 shares of common stock outstanding of the defendant corporation. Scott was the owner of record of 5,374 shares and Feeley and his wife of 2,673 shares. Kobre likewise recites that Scott informed him that their principal office was in St. Louis, but that the defendant had an office in the City of New York in Feeley's residence in Queens County. A letter that the defendant, by its president, Scott, wrote in response to a business inquiry, says: "I have noted your letter of March 12. You had better get in touch with Joe Feeley with regard to all prices, because, as you know, he is handling that territory and is in complete charge of your pricing arrangement."

From the Scott affidavit, replying to the Kobre and Weinstein affidavits, it appears that the main and only office and place of business of the defendant is in St. Louis, Mo., and that all contractual relations between the defendant and its dealers and distributors are carried on from that city. He denies that the residence of Feeley is a branch office of the defendant and states that Feeley does not execute contracts for the defendant and has never executed contracts for the defendant, "as all contracts for the defendant are sent to the only place of business the defendant has, namely, 1922 Pine Street, St. Louis, Mo., for execution." Feeley keeps no records of sales at his residence, for all records of the defendant are kept in St. Louis. He states that the defendant has no telephone in the State of New York nor telephone listing and has no bank account in the State of New York. He explains that the contract with Kobre, and others made in 1935, were executed in New York because he came on at the request of Kobre and in order to accommodate the group. Feeley says that he never made a contract in this state and was not authorized to do so, and that he never signed a contract in this state. He denies that he told anybody that his residence was an office of the defendant.

From the foregoing it is apparent that there are essential contradictions which cannot be satisfactorily determined on the basis of the affidavits.

The Rules of Civil Procedure, Rule 4, subdivision (d)(3), 28 U.S.C.A. following section 723c, provide that service of the summons and complaint upon a domestic or foreign corporation shall be effected by delivering a copy thereof "to an officer, a managing or general agent * * *". There can be no serious contention that Feeley does not fall within that category, for he was both vice president and managing agent so far as the sales of the defendant corporation were concerned. But whether the defendant was doing business in the State of New York within the purview of the controlling authorities, state or federal, cannot be conclusively determined without an examination and cross-examination of witnesses. It is necessary to determine, for example, whether Feeley's residence was a branch office of the defendant. In Tauza v. Susquehanna Coal Co., 220 N.Y. 259, 115 N.E. 915, the facts, among other things, disclose that important circumstance. If there was no such branch office of the defendant in the State of New York, then the facts closely approximate those of Holzer v. Dodge Bros., 233 N.Y. 216, 135 N.E. 268. Do the facts fall within International Har-

vester v. Kentucky, 234 U.S. 216, 34 S.Ct. 853, 58 L.Ed. 1284? It was found there that the defendant was engaged in a continuous course of business in the solicitation of orders and the facts there too disclose that in addition to solicitation of orders there was a continuous course of shipment into the state and authority to receive payment. Will the facts warrant the inference that the corporation was present in the State of New York? Tauza v. Susquehanna Coal Co., supra; Davega, Inc. v. Lincoln Furniture Mfg. Co., Inc., 2 Cir., 29 F.2d 164; Philadelphia & Reading R. Co. v. McKibbin, 243 U.S. 264, 37 S.Ct. 280, 61 L.Ed. 710.

The matter will be submitted to a special master to hear and determine.

In conclusion it should be observed that the contention of the plaintiff that the defendant has voluntarily appeared in the Supreme Court and, therefore, cannot now appear specially to vacate a summons, is without merit. General Investment Co. v. Lake Shore R. Co., 260 U.S. 261, 43 S.Ct. 106, 67 L.Ed. 244. It is entirely clear that the defendant did not appear for the purpose of trying the case on the merits but merely for the purpose of setting aside the process and raising a jurisdictional question.

Settle order on notice.