NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 12-3295
_____

CHRISTIAN ESCANIO,
                              Appellant

v.

UNITED PARCEL SERVICE; TOM DOWLING;
RICK LEZOTT; JEFF O'BRIEN; JOHN DOE (1-12);
XYZ CORPORATION (1-12)
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 2-11-cv-01361)
District Judge:  Honorable Dennis M. Cavanaugh
_____

Submitted Under Third Circuit LAR 34.1(a)
September 10, 2013

Before:  RENDELL, JORDAN and GREENAWAY, JR., *Circuit Judges*.

(Filed: September 12, 2013)

_____

OPINION OF THE COURT
_____

JORDAN, *Circuit Judge*.

Christian Escanio appeals an order of the United States District Court for the District of New Jersey granting summary judgment to United Parcel Service ("UPS") on his claims of retaliation and of discrimination based on ethnicity and national origin. For the reasons that follow, we will affirm.

I.      **Background**[1]

Escanio, who is Hispanic, began working for UPS in New Jersey on September 6, 1995. At the time, he worked as a part-time employee loading and unloading vehicles and sorting packages. On September 23, 2002, UPS promoted Escanio to a position called "package car driver." Less than a month later, UPS sent him back to his position as a hub sorter because he was involved in an avoidable vehicular accident during a thirty-day probationary period. The following year, on November 10, 2003, UPS promoted him to a full-time position as a combination driver and loader/unloader inside the Meadowlands UPS facility. In April 2005, he was again promoted to be a package car driver but was returned to his combination position before the end of the probationary period. The reason UPS gave him for that change was his poor performance.

On May 15, 2006, Escanio was, for the third time, promoted by UPS to be a package car driver, and he remained in that position following his successful completion of the probationary period. He was given a permanent delivery route in 2008 out of UPS's Jersey City Center and continued there until his termination in April 2009.

---

[1] Given our standard of review, *see infra* note 5, we set forth the facts in the light most favorable to Escanio.

Over the course of Escanio's employment, he filed numerous internal complaints, the first on September 4, 2004. In that complaint, he alleged that Meadowlands Division Operation Center Manager Rick Lezott had "intimidated and threaten[ed]" him. (App. at 412.) According to Escanio's testimony, Lezott singled him out from among his coworkers and told him to wash his delivery truck while waiting for work, but Lezott did not make any racial or ethnic comments.

On May 1, 2006, Escanio submitted an internal complaint regarding stagnation in his career. He complained of "mistreatment and humiliation" and his seniority being overlooked in promotion decisions, while outside hires received more favorable treatment. (App. at 419.) He believed that his failure to be promoted was retaliation for his September 2004 complaint. As noted earlier, Escanio was promoted to the position of package car driver shortly thereafter, on May 15, 2006.

Escanio sent a letter of complaint to UPS's human resources department in Atlanta, Georgia, on December 22, 2007. He alleged that Jersey City Center Manager Jeff O'Brien discriminated against him by placing him on notice of discharge after he returned to the UPS facility later than the time he had been directed to return. He further stated his belief that O'Brien's action was one of retaliation, tied back to Escanio's 2004 complaint against Lezott. Escanio's complaint did not make mention of racial or national origin discrimination, and he faced no disciplinary action resulting from the notice of discharge.

Over the course of 2008 and 2009, Escanio filed multiple union grievances. On February 1 and 4, 2008, he filed separate union grievances alleging harassment and over-

3

supervision by the management of the Jersey City Center. Those grievances arose after a manager rode along and observed Escanio completing his delivery route five days in late January. On February 6, 2008, he filed another union grievance alleging harassment and over-supervision by management. In that grievance, he stated that he was called into his manager's office on over five consecutive days, which he alleged was done in retaliation for his complaints against Lezott and O'Brien. On March 3, 2009, Escanio filed a union grievance that claimed he was being harassed by the manager of the Jersey City Center. He filed another union grievance against management on April 1, 2009, alleging that he was "disrespected and intimidated." (App. at 206.)

During Escanio's time as an employee of UPS, a number of issues arose concerning his job performance. On June 8, 2007, a UPS customer called to complain about Escanio's using profanity and attempting to start a fight with the customer. A different customer complained on November 16, 2007, stating that Escanio argued with him, and the customer asked that another driver be assigned to make deliveries to his address. On February 19, 2009, a third customer filed a complaint regarding Escanio, stating that he routinely blocked her driveway and became arrogant when the customer asked that he move the truck. After each of those complaints, the manager of the Jersey City Center met with Escanio to discuss what had happened.

There were also concerns regarding Escanio's efficiency during the workday. From January 14 through 16, 2008, during an on-job supervision, Escanio's supervisor observed Escanio work multiple hours over his planned, or allowed, total each day. The supervisor noted that Escanio did not adhere to UPS delivery methods, and he believed

4

Escanio purposely extended the time it took to complete deliveries. UPS reallocated some of Escanio's work to allow him to complete his deliveries within the planned hours. Nevertheless, he continued to log more total hours than his allowed total.

On April 6, 2009, UPS management noticed that, on April 1 and 2, Escanio appeared to have exceeded his allotted sixty-minute meal period, an allowance established by the Collective Bargaining Agreement between UPS and Escanio's bargaining representative, the Teamsters Union. UPS initiated a surveillance investigation, observing Escanio on his delivery route on April 6 and the next five consecutive workdays. On each day, he took a lunch break longer than sixty minutes. On April 13, a supervisor again observed Escanio taking a lunch break in excess of one hour. On all of these days, he reported taking a one-hour lunch.

Following UPS's surveillance investigation, Escanio's manager met with him, charged him with being dishonest, and revoked his company ID card. UPS then met with Escanio and his union representatives on April 15, 2009, discussed his extended lunch breaks and his falsified time cards, stated that the reason for his discharge was dishonesty, and terminated his employment.[2]

---

[2] On the day his employment was terminated, Escanio sent a letter of complaint to the UPS human resources department in Atlanta, Georgia, in which he alleged years of mistreatment, discrimination, and harassment due to race and national origin. Escanio alleged that on March 27, 2009, his manager stated that he would never have promoted Escanio to the package car driver position. In that complaint, Escanio claimed that the meeting on April 15, 2009, regarding his notice of discharge for dishonesty, was really about Escanio's "discrimination/harassment complaint" against the manager.

Escanio brought suit on May 11, 2009, in the Superior Court of New Jersey against UPS, Tom Dowling, Rick Lezott, and Jeff O'Brien.[3] In his complaint, he alleged a claim of retaliation, in violation of the New Jersey Law Against Discrimination, N.J. Stat. Ann. § 10:5-1 *et seq.*, a claim of ethnicity and national origin discrimination, also in violation of the New Jersey Law Against Discrimination, and claims for negligent and intentional infliction of emotional distress. After discovery, UPS moved for summary judgment on all of Escanio's claims. On March 4, 2011, the court denied UPS's motion regarding the retaliation and discrimination claims, but granted it on the negligent and intentional infliction of emotional distress claims, and it also dismissed the claims against the individual defendants. Once the individual defendants were dismissed, which created complete diversity of citizenship among the parties, UPS removed the matter to the District Court on March 10, 2011.[4] Without reopening discovery, and with leave of

---

[3] To cover claims he wanted to make against unknown individuals and entities, Escanio also named "John Doe" and "XYZ Corporation" as defendants.

[4] That removal was apparently untimely, but Escanio did not move for remand. Once diversity was established, UPS had thirty days to remove the action to the District Court. 28 U.S.C. § 1446 (b)(3). Although UPS did that, because jurisdiction was based upon diversity of citizenship, it could only remove within one year after the action was filed, regardless of when diversity was finally established. *Id.* § 1446(c). And because it removed the action almost two years after Escanio filed it, such removal was untimely. But Escanio never moved to remand the matter, though he could have done so within thirty days after removal. *Id.* § 1447(c). He thus cannot seek remand now, as it is undisputed that jurisdiction was proper at both the time of removal and judgment. *See Grubbs v. Gen. Elec. Credit Corp.*, 405 U.S. 699, 700 (1972) ("We have concluded that, whether or not the case was properly removed, the District Court did have jurisdiction of the parties at the time it entered judgment. Under such circumstances the validity of the removal procedure followed may not be raised for the first time on appeal … ."); *Ariel Land Owners, Inc. v. Dring*, 351 F.3d 611, 616 (3d Cir. 2003) ("Because failure to

Court, UPS moved for summary judgment on Escanio's retaliation and discrimination claims. The Court granted UPS's motion, concluding that Escanio could not prove that his discharge was the result of retaliation for his complaints, nor could he prove that it was the result of discrimination based upon his ethnicity and national origin.

Escanio filed this timely appeal.

## II.     Discussion[5]

Escanio presents two arguments in support of his request for reversal of the District Court's grant of summary judgment to UPS. First, he argues that the District Court could not properly grant summary judgment because the New Jersey state court had already denied summary judgment on the same claims, and the District Court was thus precluded from deciding the issue again. Second, he argues that, on the merits, the District Court erred when it concluded there was insufficient evidence from which a jury could conclude that UPS discharged him either in retaliation for his complaints of

---

remove within the one-year time limit … is not a jurisdictional defect, a district court has no authority to order remand on that basis without a timely filed motion.").

[5] The District Court had jurisdiction pursuant to 28 U.S.C. § 1332(a). We have jurisdiction pursuant to 28 U.S.C. § 1291. "Review of a district court's decision to grant a motion for summary judgment is plenary." *Liberty Lincoln-Mercury, Inc. v. Ford Motor Co.*, 676 F.3d 318, 323 (3d Cir. 2012) (internal quotation marks omitted). "[S]ummary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(c), which has since been re-numbered as 56(a), with the further change of the word "issue" to "dispute") (internal quotation marks omitted). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In reviewing the

mistreatment or because of his ethnicity or national origin. We conclude that neither argument has merit.

A. *Preclusion*

Escanio first argues that the doctrines of claim and issue preclusion apply here and should have prevented the District Court from granting summary judgment to UPS. Specifically, Escanio contends that because the New Jersey state court previously decided UPS's summary judgment motion on the same claims, with the same evidence, the District Court was not allowed to provide UPS with "another bite at the proverbial apple." (Appellant's Br. at 26.) He is wrong.

Neither claim nor issue preclusion prevented the District Court from deciding UPS's motion for summary judgment. Both of those doctrines require a previous judgment in a separate case for such judgment to have preclusive effect. *Tarus v. Borough of Pine Hill*, 916 A.2d 1036, 1050 (N.J. 2007) (providing that collateral estoppel requires a judgment in a prior action); *Velasquez v. Franz*, 589 A.2d 143, 147 (N.J. 1991) (explaining that claim preclusion requires a judgment in a prior action). But there is no second case here, only the same case that was removed from state court to federal court. Moreover, nothing prevents a judge from revisiting the denial of summary judgment in the same case because that earlier denial is interlocutory, not final. *Bines v. Kulaylat*, 215 F.3d 381, 384-85 (3d Cir. 2000). Removal does not change the interlocutory nature of the denial of summary judgment. *See Gen. Inv. Co. v. Lake Shore & M. S. Ry. Co.*, 260

---

record, we must construe all reasonable inferences in the light most favorable to the nonmoving party. *Id.* at 255.

8

U.S. 261, 267 (1922) (concluding that denial of a motion to dismiss for improper service was interlocutory and district court could reconsider the same motion after removal). Accordingly, the District Court was not precluded from deciding UPS's motion.[6]

B. *Merits*

With respect to retaliation, to establish a prima facie case "a plaintiff must show that: (1) the employee engaged in a protected employee activity; (2) the employer took an adverse employment action after or contemporaneous with the employee's protected activity; and (3) a causal link exists between the employee's protected activity and the employer's adverse action." *Abramson v. William Paterson Coll. of N.J.*, 260 F.3d 265, 286 (3d Cir. 2001) (footnote omitted).

Escanio has not shown a sufficient causal link between the protected activity and his discharge. Shortly before his termination, on March 3, 2009, he filed a union grievance that claimed he was being harassed by the manager of the Jersey City Center. He filed another union grievance against management on April 1, 2009, alleging that he was "disrespected and intimidated." (App. at 206.) But the mere temporal proximity of his termination to those complaints is insufficient, on its own, to demonstrate the required causal nexus. *See Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 503 (3d Cir. 1997) ("[T]he mere fact that [an] adverse employment action occurs after [the protected activity] will

---

[6] Escanio also invokes the *Rooker-Feldman* doctrine in an attempt to argue that the District Court improperly decided UPS's motion for summary judgment. He failed to present that argument to the District Court. "We have consistently held that we will not consider issues that are raised for the first time on appeal absent compelling reasons." *Srein v. Frankford Trust Co.*, 323 F.3d 214, 224 n.8 (3d Cir. 2003) (internal quotation

ordinarily be insufficient to satisfy the plaintiff's burden of demonstrating a causal link between the two events." (internal quotation marks omitted)).  Only when the facts are "unusually suggestive of retaliatory motive" may temporal proximity alone support an inference of causation.  *Id.* (internal quotation marks omitted).  That is certainly not the case here.  It is true that Escanio made several complaints to UPS, but it is equally true that after such complaints Escanio was promoted several times.  Given Escanio's history of poor performance, and the fact that, shortly before his termination, UPS observed Escanio repeatedly taking extended lunch breaks and falsifying time cards, his termination is not "unusually suggestive of retaliatory motive."

As for discrimination based upon ethnicity or national origin, "[t]he existence of a *prima facie* case of employment discrimination is a question of law that must be decided by the Court."  *Sarullo v. U.S. Postal Serv.*, 352 F.3d 789, 797 (3d Cir. 2003).  That prima facie case requires a showing that the "plaintiff (1) belongs to a protected class, (2) was performing in the position from which [he] was terminated, (3) nevertheless was fired, and (4) the employer sought someone to perform the same work after [he] left." *Zive v. Stanley Roberts, Inc.*, 867 A.2d 1133, 1145 (N.J. 2005).

Escanio argues that the District Court erred in granting UPS summary judgment on his claims of discrimination.  In particular, he contends that he was "disciplined more harshly as compared to his Caucasian/non Hispanic counter parts."  (Appellant's Br. at 12.)  Escanio relies on an affidavit provided by Raymond Antonio, a former UPS

marks omitted).  Escanio has not identified any compelling reason in this case, and we thus decline to consider his *Rooker-Feldman* argument.

10

employee, who was assistant shop steward for the Teamster Local No. 177 from 2004 until 2006 and then was shop steward from 2006 to 2008 and from February 2010 to September 29, 2010. Briefly, Antonio's affidavit describes three incidents in which non-Hispanic employees extended their lunch hour but were not fired as Escanio was.

Antonio's affidavit, however, consists entirely of inadmissible hearsay, *see* Fed. R. Evid. 802, and thus cannot be relied upon to defend against a motion for summary judgment, *see Smith v. City of Allentown*, 589 F.3d 684, 693 (3d Cir. 2009) ("Hearsay statements that would be inadmissible at trial may not be considered for purposes of summary judgment."). The affidavit is a collection of information gleaned from union grievances, and Escanio provides no argument that such evidence is not hearsay or that it is subject to an exception to the hearsay rule.

Without that affidavit, Escanio has plainly failed to adduce sufficient evidence to establish a prima facie case of discrimination. Indeed, he has no evidence that he was fired because of his ethnicity or national origin. None of his complaints during his tenure at UPS indicated that he was discriminated against based on his ethnicity or national origin. The only complaint that did claim discrimination was penned on the day of his termination. What is clear from the record is that Escanio's performance as a driver was lacking. He had had several confrontations with customers and was observed on several occasions prolonging his route and lunch breaks and then falsifying his time records. Escanio has simply failed to establish a prima facie case that his termination was based on any discriminatory motive.

11

## III.    Conclusion

For the foregoing reasons, we will affirm the judgment of the District Court.